Julie LA FLEUR, an infant, by David Blackey, Guardian ad Litem, and Lauren La Fleur, Plaintiffs-Appellants-Petitioners,

v.

Gerald MOSHER, The City of La Crosse, and The Home Insurance Company, Defendants-Respondents.

Supreme Court

*No. 81–1171. Argued October 4, 1982.—Decided November 2, 1982.*

(Also reported in 325 N.W.2d 314.)

For the plaintiffs-petitioners there was a brief by *David Blackey* and *Bosshard, Sundet & Associates,* La Crosse, and oral argument by *Mr. Blackey.*

For the defendants-respondents there was a brief by *Charles B. Harris* and *Richards, Wall & Harris*, Hudson, and oral argument by *Charles B. Harris*.

BEILFUSS, C.J.   This is a review of an unpublished decision of the court of appeals which affirmed the judgment of the Circuit Court for La Crosse County granting the defendants' motion for summary judgment.

For the purpose of considering the motion for summary judgment, the parties stipulated to the following facts:

On May 24, 1979, the plaintiff, Julie La Fleur, then fourteen years old, attended a concert at the Mary E. Sawyer Auditorium.  At approximately 8:45 p.m., she became ill.  Personnel from the auditorium contacted the La Crosse Police Department at approximately 9 p.m. Officers Warren Zielke and Thomas Patrasky went to the auditorium where they found the plaintiff on the sidewalk outside the auditorium near a puddle of vomit. The officers began to take the plaintiff home when, after traveling a short distance, she indicated that she was going to vomit.  The officers stopped the car and allowed the plaintiff to get out.  As a result of that episode, they felt that it would be best to take Ms. La Fleur directly to the La Crosse Police Department.

Lieutenant Gerald Mosher, the officer in charge of the shift, and Officer Patrasky, made several unsuccessful attempts to contact Ms. La Fleur's parents at their home.  At approximately 10 p.m., the plaintiff again indicated that she was going to vomit.  Because of the plaintiff's continued illness and the fact that Lieutenant Mosher had to attend to other duties, he put the plaintiff in an unoccupied cell.  The cell was in a wing of the police station that was used infrequently and was empty on the night involved.  Lieutenant Mosher placed the plaintiff in the cell without locking the door.  He did, however, lock the door leading to the cell area in order

to assure the plaintiff's privacy and the use of the restroom facilities.

Lieutenant Mosher did not intend to keep the plaintiff in the station overnight. He intended to call her parents so that they could take the plaintiff home. However, Lieutenant Mosher forgot about the plaintiff and neglected to inform the next shift commander of her presence. However, he did sign a police form indicating that the plaintiff had been released on May 24, 1979. He did not fill in the blank that indicates the time of release because he intended to fill that in when she was picked up by her parents. The plaintiff's parents called the station on the morning of May 25, 1979. They were informed by the officer in charge that the plaintiff had been released on the 24th. The plaintiff was not found until approximately 11:30 a.m., on May 25, 1979.

When the plaintiff was taken to the cell she lay down on a cot as directed by Lieutenant Mosher and fell asleep within a short time. The plaintiff awoke at 1 a.m., experiencing thirst. She tried to get a drink of water from a faucet in the cell, but the water was too rusty to drink. She knocked on the cell wall with her fist on and off until 2:30 a.m., and then fell asleep. She awoke at 6:30 a.m., and knocked on the walls, slammed doors and yelled intermittently until 11:30 a.m., when she was discovered by the officers on duty.

During the period that the plaintiff was in the cell she was cold and hungry and became frightened that there would be a fire and she would die. She also became convinced that her parents knew she was in the holding cell and that they were leaving her there to teach her a lesson. The plaintiff suffered no physical injuries but was diagnosed by a psychiatrist as having suffered a traumatic neurosis as a result of the confinement. Ms. La Fleur, by her guardian *ad litem,* and her father, Lauren La Fleur, instituted this action against Lieuten-

ant Mosher and the City of La Crosse to recover for the emotional distress allegedly caused by the negligent confinement.

The defendants moved for summary judgment on the grounds that the plaintiffs have failed to state a claim for relief because Ms. La Fleur suffered no physical injuries. The trial court granted the motion, relying on this court's decision in *Ver Hagen v. Gibbons,* 47 Wis. 2d 220, 177 N.W.2d 83 (1970). In *Ver Hagen* we held that there can be no recovery for negligent infliction of emotional distress unless the emotional distress is manifested by physical injuries. The trial court found that being cold, hungry and scared did not constitute physical injuries and therefore granted summary judgment. The court of appeals affirmed, also holding that there can be no recovery for negligent confinement which caused emotional distress in the absence of accompanying physical injuries. We granted the plaintiffs' petition for review.

The issue on review is whether negligent confinement which results in emotional distress is actionable without accompanying physical injury. We conclude that under the appropriate and limited circumstances a plaintiff may maintain an action for emotional distress caused by negligent confinement in the absence of physical injuries.

This court has consistently expressed its reluctance to allow recovery for emotional distress in the absence of accompanying or resulting physical injuries. *Ver Hagen v. Gibbons,* 47 Wis. 2d 220, 177 N.W.2d 83 (1970); *Alsteen v. Gehl,* 21 Wis. 2d 349, 124 N.W.2d 312 (1963); *Wilson v. Continental Insurance Cos.,* 87 Wis. 2d 310, 326, 274 N.W.2d 679 (1979). The policy behind this reluctance is the fear of flooding the courts with fraudulent claims and exposing defendants to potentially unlimited liability for every type of mental disturbance. It further reflects the unwillingness of the law to step in where social controls are more applicable.

Because of these policy concerns, this court has held that in negligent torts mental distress is compensable only when accompanied by physical injuries. *Ver Hagen v. Gibbons,* 47 Wis. 2d 220, 177 N.W.2d 83 (1970). An examination of the cases dealing with recovery of emotional distress alone demonstrates that the physical injury requirement has been deemed necessary to distinguish between genuine and fraudulent claims for negligent infliction of emotional distress.

This court gave emotional distress independent legal status in *Alsteen v. Gehl,* 21 Wis. 2d 349, 124 N.W.2d 312 (1963). In *Alsteen* the plaintiff brought an action to recover for emotional distress which resulted from the defendant's *intentional* conduct in the course of performing a contract to repair the plaintiff's home. The court recognized that due to the difficulties in proof of emotional distress the ". . . ' "judicial process is not well adapted to distinguishing valid from fraudulent claims. . . ." ' " 21 Wis. 2d at 358, quoting Annot., *Torts—Emotional Disturbances,* 64 A.L.R.2d 100, 113 (1959). But the court found that the factual basis for denial of recovery had changed in the tort of intentional infliction of emotional distress. The court found that it had the "tools" to intelligently evaluate claims of emotional injury when the following four factors were present:

"(1) The plaintiff must show that the defendant's conduct was intentional; that is to say, the defendant behaved as he did for the purpose of causing emotional distress for the plaintiff.

"(2) In addition to being intentional, the defendant's conduct must be extreme and outrageous. . . .

"(3) The plaintiff must demonstrate that the defendant's conduct was a cause-in-fact of his injury. . . .

"(4) The plaintiff must demonstrate that he suffered an extreme disabling emotional response to the defendant's conduct. . . ." 21 Wis. 2d at 359–60.

Examining the second factor, the court stated:

"The requirement that the conduct be extreme and outrageous reflects our concern with the difficulties surrounding proof of the existence of severe emotional harm, and proof of a causal relationship between the injury and the defendant's conduct. *If the conduct is gross and extreme it is more probable that the plaintiff did, in fact, suffer the emotional distress alleged.* Moreover, the requirement of extreme and outrageous conduct as a condition of recovery will avoid litigation 'in the field of bad manners, where relatively minor annoyances had better be dealt with by instruments of social control other than the law.' " (Emphasis supplied.) 21 Wis. 2d at 360, quoting Magruder, *Mental and Emotional Disturbance in the Law of Torts,* 49 Harvard L. Rev. 1033, 1035 (1936).

This statement clearly indicates that the court recognized the outrageousness of the conduct as an assurance that the emotional distress is not feigned because of the probability that emotional distress will result from such conduct. Thus, in the tort of intentional infliction of emotional distress the very nature of the conduct involved provides a guarantee that the claim for emotional distress is genuine and serious.

This court has refused to extend *Alsteen* to emotional distress claims based on negligence and has continued to require proof of physical injuries. The leading case in Wisconsin on the negligent infliction of emotional distress is *Ver Hagen v. Gibbons,* 47 Wis. 2d 220, 177 N.W.2d 83 (1970). In *Ver Hagen* the court examined the *Alsteen* decision and found that the "tools" available to evaluate claims based on intentional conduct are not available in negligence actions. The court, recognizing *Alsteen's* concern with distinguishing real from fraudulent or trivial claims of emotional distress held that ". . . emotional stress must be manifested by physical injuries in actions based on negligence rather than intentional conduct." 47 Wis. 2d at 227.

The underlying premise of this holding is that in negligence actions physical injuries are required as the "tool" to distinguish valid from fraudulent or trivial claims of emotional injury. Where the emotional distress manifests itself by physical injuries it is more probable that the claimed distress is real and serious. When no physical injuries result or accompany the emotional distress there is less likelihood that the distress is either genuine or severe.[1]

We generally affirm *Ver Hagen* and continue on public policy grounds to require proof of physical manifestations of emotional distress in negligence actions. The physical injury requirement is necessary in order to avoid flooding the courts with fraudulent or trivial claims based on negligent infliction of emotional distress. While this approach has been criticized as creating artificial barriers to recovery by deserving claimants, we believe that it is a practical solution to the problems of proof of emotional distress claims. This approach strikes the appropriate balance between the rights of injured parties to obtain a remedy for a wrong, and the rights of defendants to be free from potentially unlimited liability and the meritless claims.

---

[1] The rationale for the distinction between intentional infliction of emotional distress and negligent infliction of emotional distress was stated by Dean Prosser as follows:

"Where the defendant's negligence causes only mental disturbance, without accompanying physical injury or physical consequences, or any other independent basis for tort liability, there is still general agreement that in the ordinary case there can be no recovery. The temporary emotion of fright, so far from serious that it does no physical harm, is so evanescent a thing, so easily counterfeited, and usually so trivial, that the courts have been quite unwilling to protect the plaintiff against mere negligence, where the elements of extreme outrage and moral blame which have had such weight in the case of the intentional tort are lacking." Prosser, *Law of Torts* (4th ed.), pp. 328–29, sec. 54 (hornbook series).

However, we conclude that under the unique facts presented in this case an exception to the *Ver Hagen* rule should be recognized. We believe the plaintiffs have stated a claim for emotional injuries caused by the negligent confinement even though Ms. La Fleur suffered no physical injures. As we have stated above, in claims for emotional distress the court has allowed recovery for emotional distress alone where there is some guarantee that the claim is genuine and serious. In the case of intentional infliction of emotional distress it is the extreme and outrageous conduct which guarantees that the claim is real. In the case of negligent torts, the requirement of physical manifestations of the emotional injury is the guarantee. We find that in the appropriate circumstances the tort of negligent confinement, though based on negligent conduct, by its very nature has the special likelihood of causing real and severe emotional distress.[2] The guarantee that the claim is probably genuine is in the nature of the tort itself.

---

[2] Dean Prosser, in discussing recovery for mental distress alone in negligence cases, states:

"In only two groups of special cases has there been any tendency to break away from the settled rule, and to allow recovery for mental disturbance alone. In one of them a respectable minority of the courts allow recovery against a telegraph company for the negligent transmission of a message, such as one announcing death, which indicates upon its face that there is an especial likelihood that such mental distress will result . . . The other group of cases has involved the negligent mishandling of corpses . . . *What all of these cases appear to have in common is an especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious.* There may perhaps be other such cases. Where the guarantee can be found, and the mental distress is undoubtedly real and serious, there is no essential reason to deny recovery. *But cases will obviously be rare in which 'mental anguish,' not so severe as to cause physical harm, will be so clearly a serious wrong worthy of redress, or sufficiently attested by the circumstances of the case.*" Prosser,

By the very fact of confinement, under facts like those set forth here, a person's right to be free from bodily restraint is infringed. This deprivation of liberty alone, when it causes serious emotional distress, is a wrong sufficiently worthy of redress that the physical injury requirement should not be necessary. When there is a substantial and unwarranted deprivation of liberty, that deprivation itself is a sufficient guarantee that the claim is not frivolous and that "it is more probable that the plaintiff did, in fact, suffer the emotional distress alleged." *Alsteen v. Gehl*, 21 Wis. 2d at 360. It is the very nature of confinement that creates the likelihood of emotional injury. Emotional harm, in the appropriate circumstances, is a reasonably foreseeable consequence of negligent confinement.

█

We do not hold that in every instance of negligent confinement there may be recovery for emotional distress alone. Rather, the following standard of liability must be met in order for an injured plaintiff to recover:

(1) The defendant must have been negligent in confining the plaintiff.

(2) The confinement must be for a substantial period of time.

(3) The circumstances surrounding the confinement must be such that a reasonably constituted person would be emotionally harmed.

(4) The confinement must be a substantial factor in causing the emotional distress.

(5) The resulting emotional distress must be severe.

Applying the above factors to the instant case, we conclude that the plaintiffs have stated a claim for negligent confinement which resulted in emotional distress alone. This case is before the court on summary judgment, based on stipulated facts. But because the only purpose

*Law of Torts* (4th ed.), pp. 329–30, sec. 54, (hornbook series). (Emphasis supplied.)

of the motion is to determine whether a claim for relief has been established by these facts, it is more in the nature of a motion to dismiss for failure to state a claim upon which relief can be granted. Sec. 802.06(2)(f), Stats. 1979–80.[3]

This court has enunciated the following standard to be applied in determining whether a claim for relief has been stated:

"We have said that pleadings are to be liberally construed with a view to substantial justice to the parties. The complaint is not required to state all the ultimate facts constituting each cause of action; and the complaint should be dismissed as legally insufficient only if 'it is quite clear that under no conditions can the plaintiff recover.' A claim should not be dismissed 'unless it appears to a certainty that no relief can be granted under any set of facts that plaintiff can prove in support of his allegations.' *Morgan v. Pennsylvania General Ins. Co.*, 87 Wis. 2d 723, 732, 275 N.W.2d 660 (1979)." *Grams v. Boss*, 97 Wis. 2d 351–52, 294 N.W.2d 473 (1980).

The stipulated facts establish a claim for negligent confinement resulting in emotional distress alone.[4] The complaint and the stipulated facts establish that the defendants were negligent in confining the plaintiff in a cell of the La Crosse Police Department. Thus the first element is met. Second, the plaintiff was confined in the cell for approximately thirteen and one-half hours. This

---

[3] The record reveals an answer has been filed by the defendants wherein the negligence alleged by the plaintiffs has been denied and an allegation that plaintiff La Fleur's parents were contributorially negligent. Because we reverse for further proceedings, the negligence issues remain to be resolved.

[4] These stipulated facts are admitted as true but only for the purposes of determining whether a claim is stated and whether relief could be granted upon these facts if they are proved. They are not facts admitted for purposes of trial and the plaintiffs are still put to their proof. *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 683, 271 N.W.2d 368 (1978).

clearly meets the requirement that the confinement be for a substantial period of time. The third requirement is also met. At the time of the incident the plaintiff was fourteen years old. She was confined for over thirteen hours without food, water and blankets. During her confinement she was cold, hungry and thirsty. We believe that, for purposes of determining whether a claim for relief has been stated, these facts adequately meet the third factor in that a reasonably constituted person would have been emotionally harmed by confinement under these circumstances. The parties have also stipulated that the plaintiff was diagnosed by a psychiatrist as experiencing a traumatic neurosis as a result of the confinement. Thus, the fourth and fifth factors are also met.

We therefore conclude that the plaintiffs have stated a claim for relief and thus the trial court's decision granting summary judgment in favor of the defendants should be reversed.

*By the Court.*—Judgment reversed and cause remanded to the circuit court for further proceedings not inconsistent with this opinion.

STEINMETZ, J. *(dissenting).* I dissent from the result reached by the majority and the reasoning used to reach that result. I would affirm the court of appeals.

This case proves the lawyers' adage that hard cases make bad law. This is borne out by the majority's language: "However, we conclude that under the unique facts presented in this case an exception to the *Ver Hagen* rule should be recognized." Thus, the majority attempts to carve out safeguards for this new cause of action in order to give this plaintiff an opportunity to present her claim to a judge or jury. However, by doing so, this has not built a cause of action on a firm founda-

tion, but rather has created a house of cards, fragile at best. The plaintiff suffered no physical injuries. The majority knowing this fatal weakness of the plaintiff's case then sets up so-called safeguards to protect against fraudulent claims of subjective suffering. The majority seeks "some guarantee that the claim is genuine and serious." That is a guarantee impossible to chart.

The significant reasoning of the majority which forms the basis for this newly recognized claim for emotional distress in negligent actions is as follows:

"In the case of intentional infliction of emotional distress it is the extreme and outrageous conduct which guarantees that the claim is real. In the case of negligent torts, the requirement of physical manifestations of the emotional injury is the guarantee. We find that in the appropriate circumstances the tort of negligent confinement, though based on negligent conduct, by its very nature has the special likelihood of causing real and severe emotional distress. *The guarantee that the claim is probably genuine is in the nature of the tort itself.*" (Footnote omitted.) (Emphasis added.)

Later the majority states, "Emotional harm, in the appropriate circumstances, is a reasonably foreseeable consequence of negligent confinement."

The majority establishes the standard of liability that must be met for a plaintiff to recover for emotional distress alone in a negligent confinement case as follows:

(1) The defendant must have been negligent in confining the plaintiff.

Comment: There is no mention here of an outrageous confinement situation and, therefore, any negligent confinement qualifies.

(2) The confinement must be for a substantial period of time.

Comment: I would imagine a "substantial period of time" depends on the circumstances, *i.e.*, time of day or night, area of confinement, conditions of confinement.

What might be a substantial period of time in a closet may not be the same for the time spent in a room with a television set, a stereo set and a library of books. It would depend on the availability of normal human facilities, such as waste facilities, drinking water, food and body comfort.

The substantial period of time test will obviously have to be applied to every imaginable fact situation, with the trial court first having to determine on a motion for summary judgment whether the facts of a case qualify.

(3) The circumstances surrounding the confinement must be such that a reasonably constituted person would be emotionally harmed.

Comment: Here the plaintiff was 14 years old at the time of the events, and had been originally attended to by the police because she appeared unable to care for herself in public.

The majority allows this new claim only for "reasonably constituted persons" in society. Does that mean a person already emotionally disturbed cannot have that condition aggravated by the confinement? The standard of a "reasonably constituted person" is an objective test and appears to be present in the law otherwise found only in the standards for provocation in heat of passion manslaughter. There is a great difference between using a concept as a partial defense to a criminal action and using it to justify an award of damages.

(4) The confinement must be a substantial factor in causing the emotional distress.

Comment: This question is obviously for the jury; however, in this case, the majority is impressed with the diagnosis by a psychiatrist who opines the confinement caused the emotional distress. Due to the nature of claims of emotional disturbance without accompanying physical injury, the discipline of medicine that will

normally offer such opinions will be psychiatrists. This court in *Steele v. State,* 97 Wis. 2d 72, 97, 294 N.W.2d 2 (1980) stated:

"While some courts may have blind faith in all phases of psychiatry, this court does not . . . We commented in an earlier case that this court has frequently been dismayed by the examination of trial court records which showed a marked propensity of those who purport to have psychiatric expertise to tailor their testimony to the particular client whom they represent. *State ex rel. La Follette v. Raskin,* 34 Wis. 2d at 622, quoting *Jessner v. State,* 202 Wis. 184, 187, 231 N.W. 634 (1930)."

(5) The resulting emotional distress must be severe.

Comment: Why? Are only those "reasonably constituted" persons who suffer "severe" distress entitled to seek recovery? The reason for this standard is obvious. It is a recognition again that these claims will breed fraud and exaggeration. It is a subjective test of whether a particular plaintiff suffered severe emotional distress.

In this case, the court is holding that traumatic neurosis, if established at trial, is a severe emotional distress.

Dorland's Illustrated Medical Dictionary (24th ed. 1965) defines "neurosis" as follows: "neurosis . . . A disorder of the psychic or mental constitution; in contrast with the psychosis, it is less incapacitating, and in it the personality remains more or less intact."

The same text defines "traumatic neurosis" as: "traumatic n., one which results from an injury."

Blakiston's Gould Medical Dictionary (3rd ed. 1956) defines "neurosis" and "traumatic neurosis" as follows:

"neurosis . . . *In psychiatry,* one of the two major categories of emotional maladjustments, classified according to the predominant symptom or defense mechanism. Anxiety is the chief symptom, and though there is no gross disorganization of personality in relation to

external reality, there may be some impairment of thinking and judgment. A neurosis usually represents an attempt at resolving unconscious emotional conflicts in a way that diminishes the individual's effectiveness in living."

"[T]raumatic neurosis. Any neurotic reaction *in which an injury is the precipitating cause;* encompasses combat, compensation, and occupational neuroses. The traumatic event usually has specific symbolic significance for the patient, which may be further enforced by secondary gain." (Emphasis added.)

"Traumatic neurosis" by medical and psychiatric definition does not appear to be, without further exposition, a severe emotional disturbance as required by the standards. If it is, then an entirely new area of claim is open for which many people in society qualify at various times of stress in their lives.

It is interesting to fathom whether the trial judge will determine on a motion for summary judgment whether a *severe* emotional disturbance is claimed and then whether the jury will only be allowed to award damages for an emotional disturbance to a "reasonably constituted person" if it is *severe*.

The court in my judgment has created an unworkable cause of action merely because it feels empathy with this young plaintiff.

I am authorized to state that Mr. JUSTICE LOUIS J. CECI joins in this dissent.