**LEADFREE ENTERPRISES, INC., an Iowa corporation, and Larry White, an individual, Plaintiffs-Appellants,**

v.

**UNITED STATES STEEL CORPORATION, a Delaware corporation, Inryco, Inc., a Delaware corporation, and Allied Structural Steel Company, a Delaware corporation, Defendants-Appellees,**

v.

**PITTSBURGH TESTING LABORATORY, Third-Party Defendant-Appellee.**

No. 82–2682.

United States Court of Appeals, Seventh Circuit.

Argued April 8, 1983.

Decided July 21, 1983.

James P. Gokey, John, Flaherty & Gillette, S.C., LaCrosse, Wis., for plaintiffs-appellants.

John A. Hansen, Stafford, Rosenbaum, Rieser & Hansen, Madison, Wis., L.C. Hammond, Jr., Quarles & Brady, Milwaukee, Wis., Bruce L. Bower, Winston & Strawn, Chicago, Ill., for defendants-appellees.

* Stanley A. Weigel, Senior District Judge for the Northern District of California, sitting by designation.

Before PELL, and COFFEY, Circuit Judges, and WEIGEL, Senior District Judge.*

PELL, Circuit Judge.

In this case we decide whether Wisconsin tort law allows the appellants to recover for lost profits and other purely economic losses caused when a bridge was closed as a result of allegedly defective construction by the appellees.

## I. FACTS

The appellees Allied Structural Steel Co. and Inryco, Inc. contracted with Iowa and Wisconsin to construct a bridge over the Mississippi River between Marquette, Iowa and Prairie du Chien, Wisconsin. United States Steel Corp., another appellee in the case, provided the steel used in the construction of the bridge. The bridge was completed in 1974.

Wisconsin inspectors discovered a crack in an arch of the bridge on October 2, 1979. Testing indicated that the steel was of inferior quality. On January 16, 1981, Iowa and Wisconsin closed the bridge. The states reopened the bridge on August 12, 1981, after some repairs were made and structural supports added. The states brought an action against the appellees in a Wisconsin court, which is still pending.

On March 25, 1981, Leadfree Enterprises, Inc. and its president Larry White brought an action in the circuit court of Crawford County, Wisconsin on behalf of the class of people who suffered incidental and consequential damages as a result of the closing of the bridge.[1] They sought $75,000,000 from the three appellees. They asserted that the closing of the bridge caused them loss of business, employment, income, time, and "numerous personal activities and opportunities." They asserted six claims based upon breach of warranty, negligence, and product liability theories. They did not contend that they suffered any physical damage to their property nor that they had any property interest in the bridge.

1. The class has not been certified.

On April 21, 1981, the case was removed to the United States District Court for the Western District of Wisconsin. On April 22, United States Steel Corp. filed a third-party complaint against Pittsburgh Testing Co., alleging that the company had negligently failed to discover the defect in the steel.

On April 23, 1981, Inryco, Inc. filed a motion to dismiss for failure to state a claim on which relief can be granted, Fed.R. Civ.P. 12(b)(6). The other appellees filed similar motions. On September 10, 1982, the district court granted the motion. The court held that under Wisconsin law a plaintiff cannot recover unless he has suffered physical injury, property damage, or damage to something in which he has at least some ownership or property interest. The court said that there was no sensible stopping point for the liability the appellants sought to impose on the appellees.

## II. DISCUSSION

■ Under Wisconsin law, which applies in this diversity case, a plaintiff in a negligence action must establish that the defendant owes a duty of care, that he breached that duty, that there was a causal relation between the conduct and the injury, and that there was actual loss or damage as a result of the injury. *Ollerman v. O'Rourke Co.,* 94 Wis.2d 27, 46, 288 N.W.2d 95, 109 (1980).

■ Rather than limiting liability by principles of foreseeability or remoteness of harm, Wisconsin's policy, once negligence is established, is to determine whether liability nevertheless may be denied because of any one of six possible grounds:

"[E]ven where the chain of causation is complete and direct, recovery may sometimes be denied on grounds of public policy because: (1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too

unreasonable a burden on the negligent tort-feasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point." *Hartridge v. State Farm Mutual Automobile Insurance Co.,* 86 Wis.2d 1, 12, 271 N.W.2d 598, 603 (1978) (quoting *Coffey v. City of Milwaukee,* 74 Wis.2d 526, 541, 247 N.W.2d 132, 140 (1976)). The district court determined that recovery was barred on the sixth ground.

The appellants contend, first, that the district court should have waited until after trial to apply the public policy factor. The appellants correctly note that Wisconsin courts often have stated that it is usually better to wait until after trial. *See, e.g., Morgan v. Pennsylvania General Insurance Co.,* 87 Wis.2d 723, 275 N.W.2d 660 (1979).

■ The court did not err, however, for two reasons. First, the appellants' attorney acquiesced in the court's decision to rule on the policy question before trial, saying: "[At trial, you] are going to learn more the extent, the details of how [the bridge closing] affected individuals or corporations. But in terms of those public policy issues, I think we can visualize right now what the ramifications were." Second, where the causal relation between the negligence and the harm is clear and the pleadings fully present the public policy questions, it is not necessary to wait until after trial. *Hass v. Chicago & North Western Railway,* 48 Wis.2d 321, 326–27, 179 N.W.2d 885, 888 (1970). Such was the case here, where there was no doubt that the closing of the bridge caused inconvenience and loss of business to commercial users. In cases in which it is apparent from the start that liability should be denied for reasons of public policy, a considerable amount of judicial time and expense can be saved by dismissing the case before trial.

■ Second, the appellants contend that several Wisconsin cases have allowed recovery for economic losses even where there was no physical injury to person or proper-

ty. They rely heavily on *La Fleur v. Mosher,* 109 Wis.2d 112, 325 N.W.2d 314 (1982), in which the Supreme Court of Wisconsin held that a plaintiff could maintain an action for emotional distress caused by negligent confinement even though no physical injury resulted.

*Mosher,* however, is readily distinguishable from the instant case. First, the Wisconsin court emphasized that it was creating a limited exception to the general rule of nonliability in cases of negligently induced emotional distress where there is no physical injury. It stressed the "unique facts" of the case and stated that the general rule remained. *Id.* at 118–19, 325 N.W.2d at 317. Second, the basis for the nonliability rule in the two situations involves different public policy considerations. In emotional distress cases, the concern is with fraudulent claims, not opened-ended liability, the idea being that there will be a great incentive to fabricate claims if there is no need to show physical injury. In the economic injury case, there is less a fear of fraudulent claims than a sense of wanting to have a sensible stopping point in order to preclude open-ended, crushing liability on a tortfeasor. Third, the injury in *Mosher* was quasi-physical: harm to the mind is much more like physical harm than is economic harm.

The appellants also cite *A.E. Investment Corp. v. Link Builders, Inc.,* 62 Wis.2d 479, 214 N.W.2d 764 (1974). There, the plaintiffs were tenants in a building that the defendant architects had designed. The plaintiffs contended that the defendants were negligent in drawing their plans because the floors settled, causing damage to the walls and rendering the building untenantable. They sought recovery for loss of fixtures, equipment, and merchandise, lost profits, and damage to their reputation and good will. The court held that the plaintiffs were entitled to prove their case at trial.

The appellants erroneously contend that this case demonstrates that purely economic loss, in the absence of any harm to the plaintiffs' person or property, is recoverable in Wisconsin. The plaintiffs were tenants and thus had a property interest in the damaged building. Even with that interest, however, the court noted that later in the trial it might appear that there were substantial policy reasons to prevent such liability. *Id.* at 491, 214 N.W.2d at 770. By contrast, the appellants here had no property interest in the bridge, but rather were mere users.

Not only do the two cases relied upon by the appellants not support their position, but several Wisconsin cases have affirmatively applied the public policy considerations to bar liability in situations where the liability, if it were allowed, would have been considerably less broad than here. In *Olsen v. Copeland,* 90 Wis.2d 483, 280 N.W.2d 178 (1979), the court refused to recognize a common law action against a tavern keeper by a plaintiff who was injured in a car accident by an intoxicated patron of the tavern. The court said that such liability would place an unreasonable burden on potential tortfeasors.

Similarly, the court in *Hass v. Chicago & North Western Railway,* 48 Wis.2d 321, 179 N.W.2d 885 (1970), held that one who negligently started a fire is not liable to a firefighter injured in putting out the fire. The court said that the imposition of liability would permit the law of negligence to enter a field with no sensible or just stopping point. *Id.* at 327, 179 N.W.2d at 888.

The appellants also assert a claim for recovery under a theory of strict products liability. They contend that either the bridge or the steel used in it is a "product." Even assuming either one is a product, which seems doubtful, we conclude that Wisconsin law precludes recovery for purely economic loss in products liability. In *Powers v. Hunt-Wesson Foods, Inc.,* 64 Wis.2d 532, 535, 219 N.W.2d 393, 395 (1974), the court stated that Wisconsin had adopted section 402A of the Restatement (Second) of Torts, which states that liability extends to bodily injury or damage to property owned by the plaintiff. (Liability has been extended to cover physical injuries to bystanders. *Howes v. Hansen,* 56 Wis.2d 247,

201 N.W.2d 825 (1972)). The appellants have no ownership interest in the bridge.

The appellants' strict liability claim is not supported by *City of La Crosse v. Schubert, Schroeder & Associates,* 72 Wis.2d 38, 240 N.W.2d 124 (1976), a case on which they rely. There, the court held that the city could recover under strict liability from a contractor for a defective roof which blew off and damaged roof eaves. The court held that damage to other property as well as to the product itself is recoverable. Unlike the instant case, the plaintiff city owned the defective product and its property was physically damaged. Here, the appellants did not own the bridge and suffered no physical damage to property.

Even if the only guidance Wisconsin law gave was the "sensible and just stopping point" policy consideration, we would hold that the liability sought here should be barred. The appellants suggest that a sensible stopping point is to require plaintiffs to have a "special relationship" with the item causing the harm (here, the bridge). This merely restates the problem. If the rule provided that only frequent users could recover, great problems would arise in determining who was a frequent user. Furthermore, a one-time commercial user might have been just as injured, if not more, by the closing if it had wanted to use the bridge the day it closed. If all commercial users would meet the sufficient relationship requirement, then the problem of a lack of a stopping point would remain. We discuss at length additional legal policy reasons for denying liability in purely economic harm cases in our recent decision in *Dundee Cement Co. v. Chemical Laboratories, Inc.,* 712 F.2d 1166, at 1170–1172 (7th Cir. 1983).

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.