Beth HOLSEN, Charles Holsen, Jr., Daniel Holsen, James Holsen, Jill Jones and Michael Jones, Plaintiffs-Appellants, †

v.

HERITAGE MUTUAL INSURANCE COMPANY, Defendant-Respondent,

PRASSER-KLECZKA, INC., Jerome J. Kleczka, James J. Waldhuetter, by his Personal Representative, and Michael G. Smukowski, Defendants.

Court of Appeals

*No. 92–3216. Submitted on briefs January 4, 1994.—Decided February 22, 1994.*

(Also reported in 513 N.W.2d 690.)

†Petition to review granted.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *M. Angela Dentice* and *Laura M. Huegerich* of *Hausmann-McNally, S.C.*, of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the briefs of *Arthur P. Simpson* of *Simpson & Deardorff*, of Milwaukee.

Before Sullivan, Fine and Schudson, JJ.

FINE, J.    Plaintiffs, five adult children of Charles Holsen, Sr., and Mr. Holsen's son-in-law, brought this action to recover damages they allegedly suffered when the Prasser-Kleczka funeral home substituted the body of another person for the late Mr. Holsen, Sr. The amended complaint alleged, *inter alia*, that negligent and intentional acts by funeral home employees caused Holsen's adult children to suffer "serious mental anguish and extreme emotional distress, which has affected them physically and which may be permanent in nature," and "that there have been physical manifestations of the serious mental anguish and extreme emotional distress" they suffered. The trial court dismissed the action. We reversed, holding that the amended complaint stated a claim because it alleged that physical injuries in addition to emotional distress were caused by the funeral home's actions. *Holsen v. Heritage Mut. Ins. Co.*, 165 Wis. 2d 641, 648-649, 478 N.W.2d 59, 62-63 (Ct. App. 1991). Subsequently, the trial court granted summary judgment to Heritage Mutual Insurance Company, the funeral home's insurance carrier, dismissing plaintiffs' negligence claim against it.[1] Although the trial court's brief oral decision did not give its reasons, beyond a statement that there were no genuine issues of material fact for trial, it is clear from the context of the submissions on summary judgment and oral argument by counsel before the trial

[1] The intentional-tort claim against Heritage was dismissed by stipulation between the parties. The trial court also granted summary judgment to the remaining defendants, the funeral home and its employees, dismissing the negligence claims against them. Only the judgment against Heritage is appealable as of right. *See* § 808.03(1), STATS. Further proceedings in the trial court have been stayed by agreement pending this appeal.

460

court that the trial court adopted Heritage's argument that the plaintiffs failed to present evidentiary material to support their contention that the funeral home's actions caused plaintiffs' alleged physical ailments.

Essentially, there are two issues on this appeal. First, plaintiffs contend that they are entitled to recover for emotional distress caused by the funeral home's actions irrespective of whether or not they can demonstrate physical injury. Second, they maintain that expert testimony on causation is not required. Although Heritage forcefully argues that the first issue is foreclosed by our earlier decision, which reversed the trial court's dismissal of the amended complaint because the complaint alleged physical injuries, we need not determine whether it is appropriate to revisit that issue because the plaintiffs have not submitted any evidentiary material by a qualified expert in support of their theory that their injuries, either emotional or emotional and physical, were caused by the funeral home. Accordingly, we affirm.[2]

Summary judgment is used to determine whether there are any disputed issues for trial. *U.S. Oil Co. v. Midwest Auto Care Servs., Inc.*, 150 Wis. 2d 80, 86, 440 N.W.2d 825, 827 (Ct. App. 1989). Our review of a trial court's grant of summary judgment is *de novo. See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315,

---

[2] We may affirm a trial court's decision for reasons other than those either presented to, or relied upon by, the trial court. *See Liberty Trucking Co. v. DILHR*, 57 Wis. 2d 331, 342, 204 N.W.2d 457, 463-464 (1973). This is especially true on summary judgment, where the requisite methodology requires *de novo* review, *see Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987).

401 N.W.2d 816, 820 (1987). First, we must determine whether the complaint states a claim for relief. *Ibid.* If the complaint states a claim and the answer joins issue, we then must determine whether the depositions, answers to interrogatories, admissions on file, and affidavits, if any, entitle a party to judgment as a matter of law. *See ibid.* Summary judgment must be entered if this evidentiary material demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RULE 802.08(2), STATS. The party with the burden of proof on an element in the case must establish that there is at least a genuine issue of fact on that element by submitting evidentiary material "set[ting] forth specific facts," RULE 802.08(3), STATS., material to that element. *Transportation Ins. Co. v. Hunzinger Constr. Co.*, 179 Wis. 2d 281, 290-292, 507 N.W.2d 136, 139 (Ct. App. 1993). As we noted in *Hunzinger*, "once sufficient time for discovery has passed, it is the burden of the party asserting a claim on which it bears the burden of proof at trial 'to make a showing sufficient to establish the existence of an element essential to that party's case.' " *Id.*, 179 Wis. 2d at 292, 507 N.W.2d at 140 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The plaintiffs have the burden of proving that their damages were caused by the funeral home. *See Collins v. Eli Lilly Co.*, 116 Wis. 2d 166, 181-182, 342 N.W.2d 37, 45 (1984), *cert. denied, E.R. Squibb & Sons, Inc. v. Collins*, 469 U.S. 826. Our resolution of this appeal thus turns on whether expert testimony is required to prove causation here, and, if so, whether there is admissible evidentiary material of record that establishes that there is at least a genuine issue of material fact on that element of the plaintiffs' case against Heritage.

462

Expert testimony is required to prove causation when "the matter is not within the realm of ordinary experience and lay comprehension." *White v. Leeder*, 149 Wis. 2d 948, 960, 440 N.W.2d 557, 562 (1989) (expert testimony not required where issue of whether the failure to properly restrain a bull caused plaintiff's injury by that bull was sufficiently within lay person's comprehension). According to the plaintiffs' brief on appeal, they sustained the following injuries as a result of the funeral home's actions: Charles Holsen, Jr. — extreme anger, poor impulse control, obsessive thoughts about the funeral, daily nightmares for six months, recurring nightmares once a month, feelings of anger and depression around his siblings, and weight gain of forty pounds; Beth Holsen — difficulty with intimacy and trust with people, difficulty dealing with stress, headaches, a pinched nerve in her neck, anger, sleeplessness, recurring nightmares, depression, lethargy, weight loss, diarrhea, neck pain, frequent colds, and a feeling of being stressed out; James Holsen — obsessive thoughts about the funeral, recurring nightmares, feeling guilty because he lied to people as to why the casket at his father's funeral was closed, gastritis, weight gain, and an inability to accept the reality of his father's death; Dan Holsen — feelings of helplessness, anger, anxiety, depression, sleeplessness, nausea, weight loss, as well as obsessive thoughts about the funeral; Jill Jones — extreme stress, nightmares, sleeplessness, nausea, diarrhea, constipation, irritable bowel syndrome, paranoia, depression, and repression of her emotions concerning her father's funeral.[3] We conclude that it is outside the realm of the

---

[3] The claim of Michael Jones, Jill Jones' husband, is derivative of her claim.

assumed ordinary experience of jurors for them to be able to determine without expert testimony which, if any, of these alleged symptoms, either physical or emotional, were caused by the conduct of the funeral home rather than as the natural consequence of the trauma that generally results from the loss of a loved one, and the other circumstances in the plaintiffs' lives.[4] *See* 3 J.

<hr>

[4] At oral argument before the trial court, counsel for Heritage recounted without contradiction the following crises in the lives of the children of Charles Holsen, Sr., other than Mr. Holsen's death and the mixup at the funeral home:

> Jill Jones had problems with diarrhea and constipation and her irritable bowel syndrome in the fall of 1990[, which she] related to the 1989 funeral home incident; is that because of some physical problem, or is it something to do with her second pregnancy? She delivered a child in May of 1990. How in the world — I can't tell that. I don't know how any average person can tell that without some medical testimony.

> The same thing with Charles Holsen[, Jr]. Are his stomach problems, his diarrhea, his rectal bleeding, his hemorrhoids, which occurred in 1991 and 1992, all related to switching of bodies in 1989 at the funeral home, or could they be related to something else? Again, no way in the world can I see anyone other than a medical expert making that causal connection.

> James Holsen, the third plaintiff, his physical malady is something called gastritis which is — his deposition has only been recently taken. We don't have the transcript, but he says that means he felt a tightness in his stomach for two months from May to July of 1990. This is roughly seven to nine months after the burial. It's also at the same time that Mr. Holsen was undergoing marriage counseling because of some problems with his wife in May to July.

> The time of the gastritis, can we say that the gastritis is — is from physical problems? Can we say it's from the funeral home incident? You have to have a doctor to say that. A lay jury — just throw a coin up in the air and make that kind of decision. It's not something that the average person knows anything about.

> Dan Holsen, the fourth plaintiff, he claims he lost 20 to 30 pounds. His stomach was upset because of the funeral home incident. Well, Mr. Holsen admitted he was a practicing homosexual.

Weinstein & M. Berger, WEINSTEIN'S EVIDENCE, ¶ 702[02] at 702-9 to 702-10 (1993) ("Certainly, the average juror will have no basis for evaluating certain kinds of evidence without the assistance of expert testimony."). Stated another way, a jury unguided by expertise beyond the ken of their mutual life experiences would have no basis, other than speculation, to decide the complex issues of causation here; there would be nothing upon which the jury could "base a reasoned choice between the two possible inferences." *Merco Distrib. Corp. v. Commercial Police Alarm Co.*, 84 Wis. 2d 455, 460, 267 N.W.2d 652, 655 (1978). Jury awards may not be based on speculation. *Ibid*. Accord-

---

During his deposition he stated his lover, his homosexual lover, died of AIDS roughly at the same time. Well, I'm sorry — died of AIDS in February of 1991. He knew that this man had AIDS at the time of the funeral. Throughout this time he knew that man had AIDS.

Are these problems that Mr. Holsen has related to some type of an HIV problem? Are they related to AIDS? Are they related to just the physical problems? Are they related to emotional upset because his lover had AIDS, or are they related to the funeral home incident? Again, I don't know how anyone other than an expert can make that decision. It has to be a medical expert who can say these problems came from the funeral home incident.

As to the final plaintiff, Beth Holsen, she complains of a sore neck. She went to a chiropractor for that, but the chiropractor is not named as a witness. Nobody is going to tell us how a sore neck was caused by switching bodies at this funeral home. She complained of some diarrhea and a 10-pound weight loss which she didn't notice until the doctor mentioned it to her 18 months later.

Again, how do we tell if that came from the funeral home incident? Lastly, she complains of colds. She says she has more colds because of the funeral home incident.

When you ask these questions, it's absurd to say that these things came from the — this funeral home and switching these bodies. It's even more absurd to say that a jury can just assume that this is where they came from. If it could be done, there would have been medical testimony provided by the plaintiffs on these issues, and they failed to do so.

ingly, expert testimony to establish a causal nexus between these alleged injuries and the funeral home's actions was required.

Plaintiffs concede that they have submitted no evidentiary material by an expert linking their alleged physical ailments to the funeral home's actions. Additionally, the only possible document in the file that even purports to give an expert opinion linking the plaintiffs' alleged emotional distress to the funeral home's actions is an unsworn report by a psychologist. As the dissent recognizes by its silence on this point, it is elemental summary-judgment law, however, that this unsworn report is not sufficient to raise a genuine issue of material fact—it is not evidentiary, as required by RULE 802.08, STATS.; as an unsworn statement, the psychologist's report would not be admissible at trial. *See* RULE 802.08(3), STATS. (papers supporting or opposing motion for summary judgment "shall be made on personal knowledge and shall set forth such evidentiary facts as would be admissible in evidence"). *See also Hopper v. City of Madison*, 79 Wis. 2d 120, 130-131, 256 N.W.2d 139, 143-144 (1977) (affidavit submitted by attorney containing matters not within his personal knowledge may not be considered in support of motion for summary judgment); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 191 (5th Cir. 1991) ("It has long been settled law that a plaintiff must respond to an adequate motion for summary judgment with admissible evidence."); *Rock v. Huffco Gas & Oil Co., Inc.*, 922 F.2d 272, 283 (5th Cir. 1991) ("To avoid summary judgment, the plaintiffs must produce admissible evidence that will create a factual issue concerning the existence of every essential component of their case."). Thus, in *Dean Medical Ctr., S.C. v. Frye*, 149 Wis. 2d 727, 734-735 & n.3, 439 N.W.2d 633, 636 & n.3 (Ct.

App. 1989), we noted that an affidavit by a qualified expert witness was required when the "issue is one on which expert testimony must be produced at trial." Such an affidavit may not, however, be conclusory—the opinion must be supported by "specific facts." *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 700-701 (9th Cir. 1981).

The plaintiffs have not submitted an affidavit or any other statement under oath by a qualified expert witness linking their alleged physical or emotional illnesses to the funeral home's actions. They have failed to demonstrate, therefore, that there is a genuine issue of material fact on the causation element of their claim. Accordingly, the trial court's grant of summary judgment must be affirmed.

*By the Court.*—Judgment affirmed.

SCHUDSON, J. (*dissenting*). The majority concludes:

> it is outside the realm of the assumed ordinary experience of jurors for them to be able to determine without expert testimony which, if any, of these alleged symptoms, either physical or emotional, were caused by the conduct of the funeral home rather than as the natural consequence of the trauma that generally results from the loss of a loved one, and the other circumstances in the plaintiffs' lives.

Majority op. at 463–464. Although that assertion is offered with certainty, it is not supported by any authority — legal or psychological — related to the circumstances of this case. Although tenable, the majority's assertion is far from certain and, I think, it

467

produces a dependency on expert testimony beyond that required under *White v. Leeder*, 149 Wis. 2d 948, 440 N.W.2d 557 (1989).

Citing *White*, the majority states that "[e]xpert testimony is required to prove causation when 'the matter is not within the realm of ordinary experience and lay comprehension.' " *Id.*, op. at 463. Although accurate as far as it goes, the majority's reference is an incomplete quotation that fails to carry *White's* context and theme. The supreme court stated:

> Before expert testimony is held to be a prerequisite, it *must* be found that the matter is not within the realm of ordinary experience and lay comprehension. *The requirement of expert testimony is an extraordinary one*, and is to [be] applied by the trial court only when unusually complex or esoteric issues are before the jury.

*White*, 149 Wis. 2d at 960, 440 N.W.2d at 562 (emphasis added).

The thrust of *White*, therefore, really is quite different than that implied by the majority. *White* emphasizes not that expert testimony *is required when*, but rather, that expert testimony *is not required unless*. Deciding in that case "that technical expert testimony was not required to establish causal negligence," *White* concluded that for expert testimony to be a prerequisite, the matter "must be found" to be outside "the realm of ordinary experience and lay comprehension." *Id.*

Thus, understanding the context and complete standard stated in *White*, we can consider what the rule must be when, in a case like the instant one, certain aspects of the matter "might" — not "must" — be

found to fall outside "the realm of ordinary experience and lay comprehension."

I acknowledge that, arguably, one might conclude, as the majority does, that an expert's testimony will assist a jury's evaluation of whether the funeral home's actions were causative of the plaintiffs' alleged emotional harm above and beyond that resulting from the death. I think it equally plausible, however, to conclude that no expert could ever demarcate the line at which the plaintiffs' emotional damage crossed from the "natural consequence of the trauma that generally results from the loss of a loved one," *see* majority op. at 464, to the unnatural consequence of the trauma that results when the corpse of a loved one is mishandled.

To cast the issue in crass but revealing terms, we should ponder the subjects of an expert's possible opinions. The jury would have the chance to consider questions such as:

> So, Dr., is it your opinion then, to a reasonable degree of medical certainty, that the plaintiff's bout of diarrhea on that particular evening was the result of aggravated stress caused by the funeral home, above and beyond any normal stress the plaintiff was suffering as a result of the death?

Would an expert's response be helpful to the jury's evaluation? Perhaps. Without an expert, however, would a jury really be incapable of assessing the credibility of witnesses and weighing the evidence in order to demarcate the line between death-stress and corpse-mishandling-stress?

Thus, if the issue is whether negligent mishandling of a corpse causes emotional harm, I conclude that the issue is not "unusually complex or esoteric." If the issue is whether and to what extent one's emotional

harm can be divided, I conclude that expert testimony is so unlikely to define where death-stress stops and corpse-mishandling-stress begins, that expert testimony is not a prerequisite under the *White* standard. Therefore, in this case I conclude that the matter is not one that mandates the "extraordinary" requirement of expert testimony. *See White*, 149 Wis. 2d at 960, 440 N.W.2d at 562.

Concluding that it was inappropriate to apply the drastic remedy of summary judgment for failure to present expert evidence in this case, I would determine whether a plaintiff may recover damages for emotional harm, without physical injury, for the negligent mishandling of a corpse.

In *La Fleur v. Mosher*, 109 Wis. 2d 112, 325 N.W.2d 314 (1982), the supreme court held that a plaintiff may claim emotional harm, without accompanying physical injury, for the tort of negligent confinement because the tort, "by its very nature has a special likelihood of causing real and severe emotional distress." *Id.* at 119, 325 N.W.2d at 317. Then, in a footnote, the court cited Dean Prosser's identification of the only torts representing " 'two groups of special cases' " allowing recovery for emotional harm without physical injury, one of which " 'involved the negligent mishandling of corpses.' " *Id.*, at 119 n.2, 325 N.W.2d at 317 n.2. Immediately thereafter, *La Fleur* explained, "The guarantee that the claim is probably genuine is in the nature of the tort itself." *Id.* at 119, 325 N.W.2d at 317.

With a common sense appraisal of "the nature of the tort itself," and, as a logical extension of *La Fleur* flowing from its favorable, footnoted reference to the tort of negligent mishandling of a corpse, I would conclude that even without any allegation of physical

injury, one can recover for emotional harm resulting from the negligent mishandling of a corpse.

Accordingly, I respectfully dissent.