CITY OF LA CROSSE, Respondent, v. SCHUBERT, SCHROEDER & ASSOCIATES, INC., and others, Defendants: KAISER ALUMINUM & CHEMICAL CORPORATION, and another, Appellants.

*No. 659 (1974). Argued March 2, 1976.—*
*Decided April 7, 1976.*
(Also reported in 240 N. W. 2d 124.)

For the appellants there was a brief by *Robert L. Mann* and *Kohner, Mann & Kailas* of Milwaukee, and oral argument by *Robert L. Mann.*

For the respondent there was a brief and oral argument by *William J. Sauer,* deputy city attorney.

WILKIE, C. J.   We reverse in part and affirm in part the order overruling the demurrer filed by the defendant-appellants, Kaiser Aluminum & Chemical Corporation and Kaiser Aluminum & Chemical Sales, Inc., in this lawsuit commenced in 1974 by the plaintiff-respondent, city of La Crosse, against defendants Schubert, Schroeder & Associates, Inc.; Carl W. Schubert; Fowler & Hammer, Inc.; Kaiser Aluminum & Chemical Corporation; Kaiser Aluminum & Chemical Sales, Inc.; Architectural Wall

Systems, Inc.; and St. Paul Fire & Marine Insurance Company. In its complaint the city alleges four causes of action growing out of the replacement of a roof on the Summit Elementary School in La Crosse.

In 1968 Fowler & Hammer, a general contractor, entered into a written agreement with the city of La Crosse to replace a roof on the Summit Elementary School. Carl Schubert and the firm of which he was a member, Schubert & Associates, had been the architects for the construction and installation of the first roof, which had begun to leak copiously in 1968. Schubert and his firm agreed to design the replacement roof without cost, and to pay part of the cost of the replacement roof.

Architectural Wall Systems was a roofing installation company and a subcontractor under the contract between the city and the general contractor. Kaiser Aluminum manufactured an aluminum roof, and its sales corporation, Kaiser Aluminum Sales, sold the roof to Architectural Wall Systems.

The replacement roof was installed in September of 1968, and soon began to leak abundantly. In November, 1970, a part of the roof blew off. In 1971 the entire roof had to be replaced.

The defendants did not demur or otherwise plead to the first cause of action, which sounds in express warranty against the general contractor, and it is therefore not at issue here. The city alleges three other causes of action—in implied warranty, in negligence, and in strict liability in tort.

The first issue on this appeal concerns the cause of action based on implied warranty. The precise questions are whether privity of contract is a requirement for maintenance of an action for breach of implied warranty (not an action for strict liability in tort), and, if so, whether the city has alleged privity of contract between it and the appellants.

There is still a requirement for privity in a cause of action based on implied warranty. Although *Dippel v. Sciano*[1] did recognize a new cause of action for strict liability in tort by adopting sec. 402A of the Restatement, 2d, *Torts*, it also expressly continued the requirement of privity in an implied warranty cause of action. This is evident from the fact that the *Dippel* court sustained the demurrer to the plaintiff's cause of action in implied warranty where there was no privity, but granted the plaintiff leave to replead a new cause of action in strict liability in tort, where privity would not be a requirement.[2]

Privity of contract "is the relation that exists between two . . . contracting parties,"[3] and in cases of defective products this privity of contract is usually that between buyer and seller. Here it is undisputed that Kaiser Aluminum Sales sold the aluminum roof to the roofing installer, Architectural Wall Systems, and that the city had no direct contractual relations with Kaiser Aluminum. The city had contracted, not with Kaiser, but with Fowler & Hammer, the general contractor. Because there was no privity of contract between the city and Kaiser, the trial court should have sustained Kaiser's demurrer to the city's second cause of action for breach of implied warranty.

In finding privity of contract, the trial court relied upon the allegation in the complaint that the architects

[1] (1967), 37 Wis. 2d 443, 155 N. W. 2d 55.

[2] The opinion of Mr. Justice HEFFERNAN in *Greiten v. La Dow* (1975), 70 Wis. 2d 589, 599, 235 N. W. 2d 677, in no way departs from the requirement of privity in an implied warranty cause of action. Although there is isolated language to the contrary, the many references in the opinion to "strict liability under the standards of sec. 402A" (*Id.* at page 600) make it clear that the requirement of privity has been eliminated in strict liability, and not in implied warranty.

[3] *Wrenshall State Bank v. Shutt* (1930), 202 Wis. 281, 283, 232 N. W. 530.

and roofing installer had acted "in concert with" Kaiser in designing the roof. However, this phrase only refers to an interrelationship between certain defendants and Kaiser, and not to any contractual buyer-seller relationship between the plaintiff-city and Kaiser. Even the further allegations that Kaiser had knowledge of the purpose for which the roof was required, and that the city relied upon Kaiser to select a suitable roof does not establish a direct *contractual* relationship between the city and Kaiser, and so there is not privity of *contract* between these parties.

The second issue raised on this appeal is whether the city has alleged sufficient facts to constitute causes of action in negligence and in strict liability in tort. As the basis for its claim of negligence against the manufacturer and sales representative, the city alleges in paragraph 18 of its complaint as follows:

"(a) The aluminum roofing materials were too thin, resulting in deflection under normal foot traffic and under loads of snow and ice, resulting in strain on sealants, ruptures, and ponding.

"(b) The aluminum roofing material was such that it was not adaptable to variations in height, width and configuration, such as those on the school roof, and it was not made or could not be made weathertight. The expansion and contraction effects were of such magnitude as to create stresses that resulted in ruptures.

"(c) The roof was designed and installed with insufficient slope on roof and gutters.

"(d) Improper edge flashings were designed and installed.

"(e) The roof was designed and built with inadequate ventilation between the old and new roofs.

"(f) The roof was designed and built in such a way that ice dams were created over the eaves, resulting in leaks.

" . . ."

In paragraph 29 of its complaint, the city also alleges the following as to the ultimate fact of negligence:

"29. That the errors and omissions described in paragraph 18 above constituted causal negligence:

" . . .

"(c) as to design, selection of materials and manufacture of materials by defendants, Kaiser Aluminum & Chemical Corporation and Kaiser Aluminum & Chemical Sales, Inc."

Obviously, the complaint alleges negligent action on the part of Kaiser in designing, selecting materials, and manufacturing the roof. The allegations of paragraph 18 are not mere conclusions, but allege the specific factual aspects of the roof which are claimed to have been defectively designed and manufactured. We conclude that the complaint obviously alleges sufficient facts to constitute a cause of action in negligence.

As for the cause of action in strict liability in tort, Kaiser contends that the mere recitation in paragraph 33 that Kaiser, while engaged in the business of selling, sold an unreasonably dangerous and defective product to the city, which reached the city without substantial change, is a conclusory allegation which fails to allege sufficient facts for a cause of action in strict liability. This overlooks paragraph 32, which realleges the factual allegations of paragraph 18, quoted above. These allegations provide a factual basis for the ultimate allegations of defect and danger. The complaint states sufficient facts for a claim of strict liability in tort.

We are concerned with the city's complaint at the pleading stage and, of course, the city will still have to prove all of the specific elements of negligence and strict liability at trial.

The remaining issue raised by the defendants' demurrer is whether the plaintiff city can seek damages for the cost of repair of the roof eaves and for the cost of the replacement of the roof itself, absent an allegation of personal injury. Damages of $985 are alleged for the cost of repainting the eaves. The complaint also seeks

damages of about $50,000 for the cost of replacement of the roof itself. Thus, damages are sought for the cost of repair of other property and for the cost of replacement of the product itself.

This issue does not arise in regard to the city's cause of action in negligence. In *A. E. Investment Corp. v. Link Builders, Inc.*,[4] this court held that a complaint which claimed property damage and loss of profits and goodwill due to a settling floor which had allegedly been negligently designed was not demurrable.

Damages to other property and to the product itself are recoverable in a cause of action based on strict liability in tort. In the recent case of *City of Franklin v. Badger Ford Truck Sales*,[5] this court allowed property damages in a strict-liability case involving a defective wheel on a fire truck. No personal injury was involved. The property damages in that case consisted of damages for harm to *other* property (the fire truck), and damages to repair or replace the defective wheel itself. This court has thus already allowed purely property damages in a strict-liability case where there was no personal injury of any kind.

In the case at bar the damages to the product itself (the roof) are associated with damages to other property (the eaves). We are also of the opinion that a strict-liability claim for pure economic loss involving only the cost of repair or replacement of the product itself and loss of profits is likewise not demurrable. Other cases have so ruled. For example, in *Air Products & Chemicals, Inc. v. Fairbanks Morse, Inc.*,[6] this court, applying Pennsylvania law, decided that economic loss damages, equal to the costs of repair and loss of profits in regard to ten large electrical motors, were recoverable in a strict-

---

[4] (1974), 62 Wis. 2d 479, 214 N. W. 2d 764.

[5] (1973), 58 Wis. 2d 641, 207 N. W. 2d 866.

[6] (1973), 58 Wis. 2d 193, 206 N. W. 2d 414.

liability action. Also, in *Santor v. A & M Karagheusian, Inc.,*[7] the New Jersey Supreme Court, which started the whole products-liability ball rolling in the *Henningsen Case,*[8] held that a user or consumer could recover loss-of-bargain economic damages from a remote manufacturer for a defective carpet. The court could discern no sound reason why the situation should:

"Be actionable against the manufacturer where the defectively-made product has caused personal injury, and not actionable when inadequate manufacture has put a worthless article in the hands of an innocent purchaser who has paid the required price for it."[9]

The court further reasoned that the principles of products liability should be applied on the basis of whether the manufacturer was "the father of the transaction," and not on the basis of whether personal injury or simple economic loss had been incurred. While the court recognized that products liability had its origins "because of the greater appeal of the personal injury claim," it concluded that, once in existence, "the field of operation of the remedy should not be fenced in by such a factor."[10] Finally, *Cova v. Harley Davidson Motor Co.*[11] is an oft-cited Michigan strict-liability case in which the court allowed damages for the cost of repair and loss of profits due to malfunctioning golf carts.[12]

---

[7] (1965), 44 N. J. 52, 207 Atl. 2d 305.

[8] *Henningsen v. Bloomfield Motors, Inc.* (1960), 32 N. J. 358, 161 Atl. 2d 69, 75 A. L. R. 2d 1.

[9] *Santor v. A & M Karagheusian, Inc., supra,* footnote 7, at page 60.

[10] *Id.* It is to be noted that the New Jersey court at this time referred to what was in fact strict liability in tort as "implied warranty" without privity.

[11] (1970), 26 Mich. App. 602, 182 N. W. 2d 800.

[12] *See, generally:* Annot. (1967), *Privity of Contract as Essential in Action Against Remote Manufacturer or Distributor for Defects in Goods not Causing Injury to Person or to Other Property,* 16 A. L. R. 3d 683, p. 703, sec. 7; Prosser, *Torts* (4th

*By the Court.*—Order reversed in part, affirmed in part, cause remanded for further proceedings not inconsistent with this opinion.

ed. 1971), p. 665, *et seq.*, sec. 101. *See also:* the cases and articles cited in *Air Products & Chemicals, Inc. v. Fairbanks Morse, Inc., supra,* footnote 6, at page 216. For cases which do not allow economic-loss damages, absent personal injury or damage to other property, *see: Fredonia Broadcasting Corp., Inc. v. RCA Corp.* (5th Cir. 1973), 481 Fed. 2d 781, 797 (applying Texas law); *Cooley v. Salopian Industries, Ltd.* (D. C. S. C. 1974), 383 Fed. Supp. 1114, 1119 (applying South Carolina law). *Seely v. White Motor Co.* (1965), 63 Cal. 2d 9, 45 Cal. Rptr. 17, 403 Pac. 2d 145, allows recovery in strict liability for personal injury and physical damage to property, but not for commercial loss such as purchase price paid and lost profits.