**TWIN DISC, INCORPORATED,**
**Plaintiff-Appellee,**
**Cross-Appellant,**

v.

**BIG BUD TRACTOR, INC., Defendant**
**and Third-Party Plaintiff-Appellant,**
**Cross-Appellee,**

v.

**GRAD–LINE, INCORPORATED,**
**Third-Party Defendant-Appellee.**

Nos. 84–2246, 84–2395.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 14, 1985.
Decided Sept. 5, 1985.

Stuart Parson, Quarles & Brady, Milwaukee, Wis., for plaintiff-appellee, cross-appellant.

Clay R. Williams, Gibbs, Roper, Loots & Williams, L. William Staudenmaier, Brian C. Tyndale, Cook & Franke, S.C., Milwaukee, Wis., for defendant and third-party plaintiff-appellant, cross-appellee.

Before WOOD and FLAUM, Circuit Judges, and PELL, Senior Circuit Judge.

FLAUM, Circuit Judge.

In this diversity case raising questions of Wisconsin law, we are asked to consider various issues concerning breach of warranty, breach of contract, negligence, and strict liability claims brought by Big Bud Tractor, Inc. ("Big Bud"), a manufacturer of large farm tractors, against the manufacturers of some defective component tractor parts. The jury awarded Big Bud $1.1 million in damages, and the district court entered judgment on that verdict after offsetting the amount that Big Bud owed on account to the component manufacturer. For the reasons set forth below, we affirm.

## I.

Twin Disc, Incorporated ("Twin Disc") is a Wisconsin corporation engaged in the manufacture and sale of heavy-duty transmissions. In 1977, Twin Disc entered into an agreement to provide heavy-duty, power-shift transmissions to Big Bud, a small Montana corporation, for use in Big Bud's manufacture and sale of large farm tractors. Grad-Line, Incorporated ("Grad-Line"), a Washington corporation, manufactured the electronic shift controllers that Twin Disc used in the transmissions that it supplied to Big Bud.

The problems leading to this suit began when Twin Disc failed to deliver on time the transmissions that the parties had agreed would be delivered in 1978. Twin Disc's consistently late delivery of transmissions in 1978 allegedly caused Big Bud to miss the 1978 fall sales season and caused Big Bud's inventory of component parts to build up at high-interest carrying costs.

After receiving assurances from Twin Disc that its production problems had been corrected, Big Bud ordered a total of forty-eight new model transmissions for delivery in January through April of 1979. None was delivered until May of that year. Big Bud missed the 1979 spring market as a

result, and its inventory continued to build up. From December 1979 to April 1980, Big Bud stopped manufacturing new tractors in order to install Twin Disc transmissions in its backlogged inventory of tractors that had been completed except for the transmissions. Big Bud estimated that as a result of the shutdown, it lost $2.9 million and missed its second spring sales season in a row.

Although Big Bud's subsequent attempt to sell its two-year backlog of completed tractors was somewhat successful, Big Bud continued to lose money. Finally, on July 15, 1982, Big Bud filed a voluntary petition for reorganization under chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 1101–1174 (1982 & West Supp.1985).

Meanwhile, on July 18, 1980, Twin Disc commenced this action to recover the approximately $1 million on account that Big Bud owed to Twin Disc for transmissions sold and delivered. Big Bud counterclaimed for over $53 million in damages, alleging breach of warranties, both express and implied, negligence, strict liability, and breach of contract. Big Bud also brought a third-party claim against Grad-Line for over $49 million in damages on breach of warranty, negligence, and strict liability theories, claiming that the delay had been due in part to defective electronic shift controllers that Grad-Line had supplied to Twin Disc.

On March 16, 1984, the district court granted summary judgment to Twin Disc and Grad-Line on all of Big Bud's negligence and strict liability claims, reasoning that Big Bud was "not an ultimate consumer of the transmissions involved in this case." *Twin Disc, Inc. v. Big Bud Tractor, Inc.*, 582 F.Supp. 208, 213 (E.D.Wis. 1984). The district court also granted Grad-Line's motion for summary judgment on Big Bud's warranty claims, dismissing the claims for lack of privity. *Id.* at 214–15. Grad-Line was accordingly dismissed as a party.

Shortly before the trial was to commence on Big Bud's contract and warranty claims against Twin Disc, Big Bud amended its

answer to admit that the amount that Big Bud owed to Twin Disc on account was $1,014,089.85. After a month-long trial, the jury entered a special verdict finding no breach of warranty but finding that Twin Disc breached a "contract or agreement to deliver or repair ... transmission equipment in a timely fashion." The jury awarded Big Bud $1,100,000 in compensatory damages. This award was offset, however, against the $1,014,089.85 that Big Bud owed to Twin Disc on account plus the $195,594.18 in prejudgment interest on that amount that the district court awarded to Twin Disc. Netting the $1,100,000 that Twin Disc owed to Big Bud with the $1,209,684.03 that Big Bud owed to Twin Disc, the district court entered a judgment awarding Twin Disc $109,684.03 plus costs.

Big Bud appeals from this judgment on several grounds, contending that: (1) the district court erred by dismissing Big Bud's tort claims against Twin Disc and Grad-Line on motions for summary judgment; (2) the district court erroneously decided that the contract between Big Bud and Twin Disc contained a disclaimer of all implied warranties; (3) the district court erred in awarding prejudgment interest on the amount that Big Bud owed to Twin Disc; (4) the district court erred in quashing the testimony of Dr. Holahan, one of Big Bud's expert witnesses, on Big Bud's lost profits; and (5) the district court incorrectly instructed the jury on Big Bud's burden of proving lost profits.

In its cross-appeal, Twin Disc alleges that: (1) the district court erred in denying Twin Disc's motion for judgment notwithstanding the verdict; (2) the district court erroneously refused to allow Twin Disc to file a supplemental complaint; and (3) the special verdict form was fatally ambiguous.

## II.

### A. Tort Claims

■ Big Bud first argues that the district court erroneously dismissed Big Bud's negligence and strict liability claims against Twin Disc and Grad-Line on their motions for summary judgment. The dis-

trict court held that Big Bud could not maintain its tort claims against Twin Disc or Grad-Line because Big Bud was an intermediate manufacturer rather than the ultimate consumer of the transmissions. *See* Restatement (Second) of Torts § 402A & comments 1, q (1965) (seller of unreasonably dangerous defective product is "subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property"); *City of Franklin v. Badger Ford Truck Sales, Inc.*, 58 Wis.2d 641, 649, 207 N.W.2d 866, 870 (1973) ("as to the ultimate user or consumer," the strict liability standard applies to makers and suppliers of defective component parts). Twin Disc and Grad-Line offer as an alternative theory supporting the district court's decision the argument that Wisconsin law does not allow recovery in tort for economic loss alone. The reasoning behind both of these theories is similar—the parties to a purely commercial transaction should not be able to recover in tort for economic losses arising out of that transaction when the parties have negotiated and the UCC provides for adequate contract remedies. It would undermine the law of sales and ignore the understanding of the parties as reflected by their contract, it is argued, if the buyer was able to recover for its economic losses under a tort theory after the seller had bargained for and the buyer had agreed to a limitation of warranty remedies. *See Twin Disc*, 582 F.Supp. at 213–14 (to allow tort remedies to overlay a purely commercial transaction would undermine certainty and predictability in business relationships and thus vitiate one of the reasons for codifying the law of commercial transactions). *See also Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.*, 626 F.2d 280, 288–89 (3d Cir. 1980) (policy considerations support view that tort action should not lie against the seller of a product solely for the failure of the product to perform as expected; importation of strict liability into the economic loss area would effectively supersede § 2–316 of the UCC); *Plainwell Paper Co. v. Pram, Inc.*, 430 F.Supp. 1386, 1388–89

(W.D.Pa.1977) (action by paper buyer against paper producer for economic harm from delivery of paper allegedly unfit for intended use in photocopying process sounds in breach of contract rather than strict liability in tort); *Superwood Corp. v. Siempelkamp Corp.*, 311 N.W.2d 159, 162 (Minn.1981) (to recognize a tort action for economic losses arising out of commercial transactions would create a theory of redress not envisioned by the legislature when it enacted the UCC).

This policy argument has not been explicitly adopted or rejected by the Wisconsin legislature or courts. The Wisconsin courts have never decided a case like the present one where two manufacturers agree to a contract containing warranty provisions, the contract is subsequently breached, and the wronged party then sues in tort for the purely economic losses arising out of that breach. Thus, the potential disruption of contract remedies and commercial relationships due to the allowance of tort remedies in business transactions has never been addressed in Wisconsin. To the extent that we can discern an indication of how the Wisconsin courts would rule in this case, we are inclined to believe that they might favor a limited use of tort remedies in commercial transactions. *Cf. Landwehr v. Citizens Trust Co.*, 110 Wis.2d 716, 723, 329 N.W.2d 411, 414 (1983) (for a cause of action in tort to exist for breach of contract to execute will in plaintiff's favor, "there must be a duty existing independently of the performance of the contract").

Big Bud argues that Wisconsin law clearly allows recovery in tort of purely economic losses by one who is not an ultimate user or consumer, and Twin Disc and Grad-Line argue that Wisconsin law clearly provides to the contrary. Wisconsin does allow, as do many states, the recovery of economic loss in tort when the economic loss is combined with damage to the plaintiff's person or property. *See City of La Crosse v. Schubert, Schroeder & Associates*, 72 Wis.2d 38, 44, 240 N.W.2d 124, 127 (1976) (stating willingness to permit recovery of economic loss where defective roofing materials caused roof to blow off and damage another portion of plaintiff's building); *A.E. Investment Corp. v. Link Builders, Inc.*, 62 Wis.2d 479, 214 N.W.2d 764 (1974) (allowing damages for economic loss where building's negligent design caused damage to building's ceiling, walls, and floor). This court has held that Wisconsin law precludes recovery for economic loss in products liability cases when there is no concomitant damage to person or property. *Leadfree Enterprises, Inc. v. United States Steel Corp.*, 711 F.2d 805, 808 (7th Cir.1983). The question then becomes whether property is defined as property other than the product itself, *see Superwood*, 311 N.W.2d at 162, or property including the product itself. The Wisconsin courts have not expressly decided this key question.[1] In short, it is not at all clear to us whether the Wisconsin courts would sustain a tort action in the circumstances of this case. Because we are unable to predict what the Wisconsin courts would do in such a case, and because of the substantial policy considerations involved, we hesitate to expand Wisconsin law to allow these tort claims in the absence of a more direct indication of intent by the state courts or legislature. We accordingly affirm the district court's dismissal of Big

---

1. In *Air Products & Chemicals, Inc. v. Fairbanks Morse, Inc.*, 58 Wis.2d 193, 206 N.W.2d 414 (1973), the Wisconsin Supreme Court expressly declined to decide whether to extend the strict liability doctrine in Wisconsin to cases alleging pure economic loss. *Id.* at 215–16, 206 N.W.2d at 425–26. Although the Court later stated in dictum that a strict liability claim could be brought for pure economic loss involving damage only to the product itself, *see City of La Crosse v. Schubert, Schroeder & Assoc.*, 72 Wis.2d 38, 44, 240 N.W.2d 124, 127 (1976), that case is distinguishable from the instant case because there *was* damage to property other than the product itself in *La Crosse* and because the plaintiffs in that case had no available warranty or UCC remedies once the Court found that there was no privity between any of the parties. *See also Leadfree Enterprises, Inc. v. United States Steel Corp.*, 711 F.2d 805, 808–09 (7th Cir.1983) (distinguishing *La Crosse* and concluding that Wisconsin law precludes recovery for purely economic loss in products liability).

Bud's tort claims against Twin Disc and Grad-Line.

### B. Warranty Claims

■ Big Bud's second contention is that the trial court erred in directing a verdict that Twin Disc had effectively disclaimed all express and implied warranties other than its express limited warranty for defective materials or workmanship, with the exclusive remedy being the repair or replacement of the defective parts. The multiple contracts between Big Bud and Twin Disc for the sale of heavy-duty transmissions were formed through an exchange of purchase orders and order acknowledgment forms. Big Bud would send purchase orders for the transmissions to Twin Disc. These purchase orders, which the district court construed as offers, contained no warranty provisions. Upon receipt of a Big Bud purchase order, Twin Disc would send an order acknowledgment form to Big Bud with Twin Disc's limited warranty and disclaimer of all other warranties printed on the reverse side. The district court held that even though Twin Disc's order acknowledgment forms stated these additional terms, they were valid acceptances, *see* Wis.Stat. § 402.207(1), and thus that the parties had entered into a series of contracts for the sale of transmissions.

Once it determined that the parties had validly contracted for the sale of goods, the district court had to decide whether Twin Disc's disclaimer of implied warranties was a part of those contracts. Section 2–207 of the UCC, as adopted in Wisconsin, provides that when an acceptance states terms additional to those offered or agreed upon, the additional terms become part of the contract between merchants unless, *inter alia,* the additional terms materially alter the contract. Wis.Stat. § 402.207(2)(b). If the additional terms materially alter the original bargain, they will not be deemed part of the contract unless expressly agreed to by the other party. *Id.* comment 3.

■ As the district court recognized, warranty disclaimers constitute material alterations of a contract. *See Air Products & Chemicals, Inc. v. Fairbanks Morse, Inc.,* 58 Wis.2d 193, 214, 206 N.W.2d 414, 425 (1973); Wis.Stat. § 402.207 comment 4. The court found, however, that Big Bud expressly assented to the additional terms "by unequivocal behavior, clearly indicating a willingness to be bound by the terms."[2] The district court relied on the facts that: (1) Big Bud had actual knowledge of the warranty terms, (2) Big Bud made inquiries regarding the warranty, (3) there was some evidence that Big Bud assigned the warranty to its own customers by telling them to contact Twin Disc direct-

**2.** Big Bud argues that this case must be remanded because the interpretation of Big Bud's conduct on the question of whether Big Bud assented to the materially altering terms is a question of fact for the jury. Although we might agree with that assertion in other circumstances, Big Bud waived its right to present that question to the jury in this case when it submitted the question to the trial judge instead.

During the argument on Twin Disc's motion for a directed verdict at the close of the evidence, counsel for Big Bud stated:

It seems to me that the first and principal question the Court needs to address in deciding what to do in terms of presentation of the case to the jury is what do we do about the issue in this case ... whether or not the limitations of liability ... in Twin Disc's written warranty form are part of a contract between Big Bud and Twin Disc.

. . . . .

Now the question the Court has is how do we resolve this. Is it a question for the jury

or a question for the Court. Do we ask the jury what the contract between the parties was or does the Court decide that. It's our position and we are in agreement with counsel for Twin Disc that that is a question for the Court.

*See also* Tr. 3451, 3458. The trial court clearly understood that the parties had agreed that the question of whether Twin Disc's limitations on implied warranties and inclusion of a limited express warranty were part of the contracts had been submitted to the court for decision. It was only after the trial court ruled adversely to Big Bud that Big Bud argued that the question should go to the jury. On this record, we hold that Big Bud waived its right to present this question to the jury when it unreservedly submitted the question to the trial court for decision. *See Nat'l Family Ins. Co. v. Exchange Nat'l Bank of Chicago,* 474 F.2d 237, 241 (7th Cir.), *cert. denied,* 414 U.S. 825, 94 S.Ct. 129, 38 L.Ed.2d 59 (1973).

ly concerning any defects in the transmissions, and (4) Big Bud invoked the warranty on many occasions and processed over 210 claims under it. Although the question is a close one, we affirm the district court's finding that this is the kind of explicit course of conduct that qualifies as express assent.

■ Big Bud argues that in order to have express assent, the parties must have negotiated and bargained for the inclusion of the materially altering terms. We disagree. The cases cited by Big Bud for this proposition hold only that express assent requires some clear indication that the parties intended to incorporate the materially altering terms into their contract, whether by negotiating and bargaining for the terms or by reaching an express and unequivocal agreement to that effect after the fact. A party might expressly agree to include a materially altering arbitration clause in a contract, for instance, by submitting a disputed issue for arbitration. Similarly, the district court found that Big Bud expressly agreed to the warranty provisions in Twin Disc's order acknowledgment forms by its course of conduct in this case. We do not find this conclusion clearly erroneous, and accordingly affirm the district court's partial directed verdict that Twin Disc's disclaimer of implied warranties and limited warranty provision were part of the contracts between Big Bud and Twin Disc.[3]

## C. Prejudgment Interest

■ Big Bud further contends that the district court erred when it assessed prejudgment interest on the $1,014,089.85 that Big Bud owed to Twin Disc on account before setting off the $1,100,000 that the jury had awarded to Big Bud. Big Bud concedes that Wisconsin law allows an award of prejudgment interest if the amount of damages is determinable and proved. *See Ma v. Community Bank,* 686 F.2d 459, 465 (7th Cir.), *cert. denied,* 459 U.S. 962, 103 S.Ct. 287, 74 L.Ed.2d 273 (1982); *Murray v. Holiday Rambler, Inc.,* 83 Wis.2d 406, 438, 265 N.W.2d 513, 529 (1978). Big Bud further concedes that the amount of damages in this case, $1,014,089.85, was determinable and proved. Big Bud's sole contention is that the district court should have offset the amount that it owed to Twin Disc against Big Bud's jury award *before* calculating prejudgment interest. Big Bud cites as support for this argument section 2–717 of the UCC, which states that a buyer may, upon notifying the seller, deduct any or all of the damages resulting from a breach of contract from any part of the price still due under the same contract. Wis.Stat. § 402.717. Big Bud claims that this provision entitles it to deduct its breach of contract damages ($1,100,000) from the contract price still due to Twin Disc ($1,014,089.85), and therefore that there was nothing left upon which to award prejudgment interest.

We believe that the district court acted within its discretion in treating the offset-

---

**3.** Big Bud further argues that Twin Disc's warranty disclaimer was invalid under UCC section 2–316(2), which provides that in order to exclude or modify the implied warranties of merchantability or fitness, the exclusion must be conspicuous. Wis.Stat. § 402.316(2). Big Bud contends that Twin Disc's warranty disclaimer was not conspicuous because it was printed in small print on the reverse side of a translucent form, and thus that Twin Disc's attempt to disclaim the implied warranties was invalid.

Because the district court found that Big Bud had actual knowledge of Twin Disc's warranty, the question of conspicuousness need not be reached. The purpose of the conspicuousness requirement is to protect the buyer from surprise. *See id.* comment 1. There is therefore

no need to determine whether a disclaimer is conspicuous, such that the buyer's knowledge of disclaimer can be inferred, when the buyer has actual knowledge of the disclaimer. *See Imperial Stamp & Engraving Co. v. Bailey,* 82 Ill. App.3d 835, 837, 38 Ill.Dec. 206, 208, 403 N.E.2d 294, 296 (1980) (conspicuousness requirement not controlling when buyer read and was aware of disclaimer provision); *Fargo Machine & Tool Co. v. Kearney & Trecker Corp.,* 428 F.Supp. 364, 372 (E.D.Mich.1977) (buyer's actual awareness and apparent endorsement of disclaimer provisions obviates any need for conspicuousness in order to prevent surprise).

We also find no merit in Big Bud's argument that Twin Disc's limited warranty remedy failed of its essential purpose.

ting amounts as independent claims for purposes of awarding prejudgment interest. Big Bud conceded that it withheld for several years money that it owed to Twin Disc on account. Twin Disc was entitled to interest on that money as a matter of law. Section 2–717, which allows a buyer to offset breach of contract damages but does not mention prejudgment interest, does not require a different result. We accordingly affirm the district court's award of prejudgment interest to Twin Disc.

**D. Twin Disc's Motion for Judgment N.O.V.**

■■■ In its cross-appeal, Twin Disc alleges that the district court erred in denying its motion for judgment n.o.v. based on insufficient evidence that Big Bud's losses were caused by Twin Disc's late delivery of transmissions. The Wisconsin standard for granting judgment n.o.v. on grounds of insufficient evidence [4] is codified at Wis. Stat. § 805.14(1), which provides that

> [n]o motion challenging the sufficiency of the evidence as a matter of law to support a verdict, or an answer in a verdict, shall be granted unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party.

See also Robison v. Lescrenier, 721 F.2d 1101, 1103 (7th Cir.1983) (applying Wisconsin standard). Twin Disc claims that there was no credible evidence that Twin Disc's delayed delivery of transmissions caused Big Bud to lose any sales because Big Bud always had a sufficient number of completed tractors to sell to its retail customers. Even if Big Bud did lose sales, Twin Disc argues that there was no evidence that Twin Disc caused the lost sales because the decline in Big Bud's sales was due to other factors such as the recession in the farm equipment market, high interest rates, in-

flation, President Carter's grain embargo, and Big Bud's internal personnel problems and bad manufacturing practices. Twin Disc also alleges that the jury's award of $1.1 million in damages was not supported by the evidence.

With regard to whether Big Bud lost any sales at all, we believe that there was credible evidence that Big Bud suffered some lost sales in 1979 and 1980. In addition, there was evidence that Twin Disc's delays were a substantial factor in causing those lost sales despite the evidence that other factors may have also contributed to or exacerbated Big Bud's problems. See Reiman Associates, Inc. v. R/A Advertising, Inc., 102 Wis.2d 305, 320–22, 306 N.W.2d 292, 300–01 (Wis.App.1981) (standard for causation is that the party seeking to recover for breach of contract must show that the breach was "a substantial factor" in causing that party's losses). There was also credible evidence supporting the amount of the jury's award. In sum, our review of the record and the briefs in this case leads us to conclude that, considering all of the credible evidence and reasonable inferences therefrom in the light most favorable to Big Bud, there was sufficient evidence to support the jury's verdict and award of damages. We therefore affirm the district court's denial of Twin Disc's motion for judgment n.o.v.

**E. Miscellaneous Claims**

**1. Dr. Holahan's Testimony**

■■ Big Bud retained Dr. William Holahan, who has a doctorate in economics, to analyze and estimate Big Bud's economic loss resulting from Twin Disc's delayed deliveries of transmissions and to testify at trial concerning the extent of that loss. The district court granted Twin Disc's motion to quash Dr. Holahan's testimony because Dr. Holahan's initial attempt to estimate Big Bud's lost profits [5] was to be based on (1) the life expectancy of Mr.

---

4. In diversity cases, state law standards govern the review of a denial of a motion for judgment n.o.v. Dickerson v. Amax Inc., 739 F.2d 270, 272 (7th Cir.1984).

5. Dr. Holahan was permitted to present to the jury a different calculation of lost profits that was less favorable to Big Bud.

Harmon, Big Bud's chief executive officer and sole shareholder, (2) projections as to Big Bud's future profits made in Big Bud's draft reorganization plan for the bankruptcy court by Mr. Harmon, whose credibility was a major issue at trial, and (3) trade association data from the Farm and Industrial Equipment Institute ("FIEI"), which the district court called an "outfit ... that apparently no one has heard of before."

The district court has broad discretion to assess the admissibility of expert testimony. *See Parker v. Board of School Commissioners*, 729 F.2d 524, 528–29 (7th Cir. 1984). Big Bud's arguments on appeal lead us to conclude only that the district court could reasonably have ruled to admit Dr. Holahan's testimony, not that it abused its discretion in disallowing it. We therefore find no error in the district court's refusal to allow Dr. Holahan to testify concerning Big Bud's preferred calculation of lost profits.

2. Jury Instruction

■ The district court instructed the jury that Big Bud had the burden of proving its lost profits to a reasonable certainty. Big Bud argues that this was a misstatement of Wisconsin law that may have led the jury to award Big Bud millions less than if the jury had been properly instructed. Big Bud interprets Wisconsin law as requiring it to prove the *fact* of consequen-

tial damages to a reasonable certainty but the *amount* of these damages only to a reasonable probability. *See Murray v. Holiday Rambler*, 83 Wis.2d at 432, 265 N.W.2d at 526; *Esch v. Yazoo Manufacturing Co.*, 510 F.Supp. 53, 56 (E.D.Wis. 1981). *But see Ma v. Community Bank*, 686 F.2d at 466 (amount of consequential losses must be proved to a reasonable certainty). We will assume that Big Bud's interpretation of Wisconsin law is correct for purposes of this discussion.

Viewing the district court's instruction as a whole, we believe that the jury was properly instructed on Big Bud's burden of proof.[6] The district court stated that mere possibilities, speculation, and conjecture as to Big Bud's loss of future profits could not support an award of damages, that mathematical certainty was not required, and that if the nature of the wrong was such as to preclude the determination of the amount of damages with certainty, then it would be enough if the evidence showed the extent of the damages "as a matter of just and reasonable inference or estimation, although the result may only be approximate." We believe that the court's instruction, when viewed as a whole, was a thorough, accurate statement of Wisconsin law. We accordingly find no error in the instruction.

**6.** The relevant portions of the district court's charge on Big Bud's burden of proving lost profits are as follows:

The loss of prospective or future profits is a proper basis for awarding damages resulting from a breach of contract when the circumstances are such that the future damages may be computed with some reasonable certainty.

The law places the burden of establishing this reasonable certainty upon Big Bud in this case.... If you find the evidence in this case to be so uncertain that you cannot do more than merely guess, speculate or conjecture as to whether or not Big Bud is entitled to recover certain specified damages due to the loss of future profits, then you cannot award damages for future profits to Big Bud in this case. Only damages as have been proved to a reasonable certainty may be allowed. The duty or burden to prove damages is not satisfied by evidence which merely shows that something might or might not exist or might or might

not occur in the future. Mere possibilities leave the resolution of the issue of damages for future profits in the field of speculation and conjecture to such an extent as to afford no basis for an inference to a reasonable certainty. And in the absence of at least such an inference, there's no sufficient basis for awarding damages for the loss of future profits.

Although damages may not be based on speculation, it is not necessary that you should arrive at a conclusion of loss of future profits with mathematical certainty. In the very nature of things, such profits cannot be definitely ascertain [sic] or determined. If the wrong itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference or estimation, although the result may only be approximate.

### 3. Supplemental Complaint

█ Twin Disc filed the initial complaint in this case in July 1980. Big Bud filed its counterclaim in September 1980. In February 1984, the district court ruled on the parties' motions for summary judgment and set trial for April 9, 1984. On March 29, 1984, Big Bud requested and was later granted leave to amend its answer in order to admit that it owed Twin Disc $1,014,089.85 on account. On April 2, 1984, one week before trial was to begin, Twin Disc sought leave to file a supplemental complaint seeking an additional $750,000 for transmissions that it had delivered to Big Bud after the original complaint had been filed but for which Big Bud had not paid because of its 1982 bankruptcy filing. The district court denied Twin Disc's motion to supplement its complaint, holding that Twin Disc's proposed supplementation "amounts to unjustifiable annexation of issues and proof on the eve of trial."

A Rule 15(d) motion to supplement the pleadings is properly addressed to the discretion of the trial court. *See Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir.1985); Fed.R.Civ.P. 15(d). The fact that Big Bud may have had notice of Twin Disc's claim against it for an additional $750,000 does not mean that Big Bud had notice that it would be required to defend against that claim at trial. This is especially true since almost two years had passed since Twin Disc had sent the invoices to Big Bud and over ten months had passed since the automatic stay on Big Bud's bankrupt estate had been lifted, yet Twin Disc had not previously sought leave to amend its complaint to include the additional $750,000 claim. We find no abuse of discretion in the district court's determinations that additional discovery might be required by Twin Disc's new claim, that it would be "manifestly unfair" to require Big Bud to meet these last minute allegations at trial on April 9, and that the trial should not be postponed to accommodate Twin Disc's new cause of action. We therefore find no error in the district court's denial of Twin Disc's motion to file a supplemental complaint.

### 4. Special Verdict Form

█ Twin Disc lastly argues that the special verdict form was fatally ambiguous because questions 4, 5, and 6 improperly framed the breach of contract issues in terms of Twin Disc's obligation to deliver *or repair* transmission equipment in a timely fashion. Twin Disc contends that the references to timely repair should not have been included in questions 4, 5, or 6 because the repair issue was subsumed in question 1, which asked whether Twin Disc had breached its warranty to repair or replace defective materials. Twin Disc argues that the jury's verdict could have been inconsistent because the jury found no breach of the warranty to make timely repairs under question 1, but could have found breach of contract in question 4 by reason of untimely repair.

█ The district court has broad discretion concerning the nature and scope of the issues to be submitted to the jury in the form of special verdict questions. *Sadowski v. Bombardier Ltd.*, 539 F.2d 615, 622 (7th Cir.1976). In addition, when it appears that there are inconsistencies in a jury's verdict, we are required on appeal to attempt to resolve the inconsistencies. *See Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962). Because question 4 is framed in the alternative, a consistent explanation of the jury's verdict is that it found no failure to make timely repairs, and thus answered "no" to question 1, yet found a failure to make timely deliveries, and thus answered "yes" to the breach of contract questions. We therefore find no fatal ambiguity in the special verdict form that was sent to the jury.

### III.

In conclusion, the district court's entry of judgment in the sum of $109,684.03 in favor of Twin Disc and against Big Bud is AFFIRMED.