**WISCONSIN POWER AND LIGHT COMPANY, et al.,
Plaintiffs-Appellants,**

v.

**WESTINGHOUSE ELECTRIC CORPORATION, Defendant-Appellee.**

No. 86–2716.

United States Court of Appeals,
Seventh Circuit.

Argued April 9, 1987.

Decided Sept. 8, 1987.

---

Michael S. Anderson, Brynelson, Herrick, Bucaida, Dorschel & Armstrong, Madison, Wis., for plaintiffs-appellants.

Peter L. Gardon, Whyte & Hirschboeck, S.C., Madison, Wis., for defendant-appellee.

Before CUMMINGS, WOOD and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

This diversity action arises out of losses sustained by plaintiffs in 1982 when a component part of a large power transformer, manufactured and sold by defendant, failed and caused extensive damage to the transformer. The district court granted defendant's motion for summary judgment, 645 F.Supp. 1129 (W.D.Wis.1986), and plaintiffs appeal. For the reasons set forth below, we affirm.

Plaintiffs Wisconsin Power & Light Co., Wisconsin Public Service Corp., and Madison Gas & Electric Co. are all Wisconsin corporations engaged in the business of generating and selling electricity to Wisconsin residents. The three companies operate the Columbia Generating Station, located in Columbia County, Wisconsin, as a joint venture. In 1973 Wisconsin Power & Light Co. ("Wisconsin Power") undertook on behalf of the joint venture to purchase a large electrical transformer for the Columbia Station.

By letter dated November 6, 1973, Wisconsin Power invited defendant to submit a proposal to furnish and deliver one main power transformer complete with accessories. Accompanying the letter was a document containing certain performance specifications, proposal forms and drawings, which had been prepared in part by Sargent & Lundy, Engineers, of Chicago. The warranty provisions of the bid solicitation provided in material part:

Contractor agrees, promptly and at his own expense, either to remedy any part of the WORK which during the first year of actual use in service proves defective or otherwise unsuitable for the aforesaid purposes, or to replace such part of the WORK by shipping to Purchaser a new part under the same terms as apply hereunder to the shipment of the original part. A similar warranty shall apply to any replacement parts.

(General Conditions for Equipment and Material Purchases, Form 207 WP & L, ¶ 5). Paragraph 4.4 of the Instructions to Bidders, included with the solicitation document, provided:

Any contract or purchase order resulting from these Bid Documents will incorporate the terms and provisions of said documents. It will be assumed that Bidder agrees to the provisions of said documents, unless exceptions are specifically and clearly listed in his bid. All such exceptions must be listed together and specifically identified as *Exceptions.* Bidder's printed terms and conditions are *not* considered specific exceptions.

In response to the solicitation, defendant submitted a proposal on December 7, 1973. In its cover letter accompanying the proposal, defendant took exception, in accordance with paragraph 4.4 above, to the warranty provisions of the bid solicitation. The letter stated that defendant's price quotation was based on "the warranty as described in Selling Policy 48–600 dated June 14, 1973, including the provisions of the special warranty" and the "limitation of liability clause as contained in SP 48–600." The Standard Warranty provision of SP 48–600 provided in pertinent part:

Westinghouse warrants that all components of the transformer delivered by it will be of the kind and quality described in the order or contract and will be free of defects in workmanship and material. Should any failure to conform to this warranty appear within one year after date of shipment, Westinghouse shall upon prompt notification thereof and substantiation that the equipment has been stored, installed, operated and maintained in accordance with Westinghouse recommendations and standard industry practice, correct such non-conformities, at its option, either by repairing any defective part or parts or by supplying a repaired or replacement part or parts F.O.B. Westinghouse Repair Service plant or factory. However, if Westinghouse has installed the equipment or furnished field engineering services with respect to its installation, and provided such installation has not been delayed by the Purchaser, the warranty period shall terminate one year after the completion of installation, or 18 months after the date of shipment, whichever occurs earliest.

In addition, Westinghouse warrants for a period of ten years from the date of shipment that the core and coil assembly of the transformer will remain free of damage resulting solely from defects in such core and coil assembly. In the event that Westinghouse is promptly notified within the warranty period of a failure to comply with this warranty, Westinghouse, at its option either will repair or replace the defective and damaged core and coil assembly or will supply a repaired or replacement core and coil assembly F.O.B. Westinghouse Repair Service plant or factory.

\* \* \* \* \* \*

The foregoing warranty is exclusive and in lieu of all other warranties of quality whether written, oral, or implied (including any warranty of merchantability or fitness for purpose).

The remedies provided above shall be Purchaser's sole remedies for any failure of Westinghouse to comply with the warranty provisions, whether claims by the Purchaser are based in contract or in tort (including negligence).

The special warranty referred to· in the letter covered the direct cost of removing the transformer or parts from service, transportation to and from the factory or repair facility, and reinstallation after repair during the period in which the standard warranty remained in effect. The

limitation of liability clause contained in SP 48–600 provided:

> Westinghouse shall not be liable in contract or in tort for special, indirect, incidental, or consequential damages, such as, but not limited to, loss of profits or revenue, loss of use of power system, cost of capital, cost of purchased or replacement power, or claims of customers of Purchaser for service interruptions. The remedies of the Purchaser set forth herein are exclusive, and the liability of Westinghouse with respect to any contract, or anything done in connection therewith such as the performance or breach thereof, or from the manufacture, sale, delivery, resale, installation or technical direction of installation, repair or use of any equipment covered by or furnished under this contract whether in contract, in tort, or otherwise, shall not exceed the price of the equipment or part on which such liability is based.

In closing, defendant's letter emphasized: our 10–year warranty on the core and coil assembly is a substantially better warranty than required by your specification. It has become the standard warranty on our Muncie transformers primarily because of the excellent field experience we have had.

The defendant followed up on its proposal with two letters written by R.L. Johnson to Douglas Peterson, the Technical Buyer for Wisconsin Power. In a letter dated December 31, 1973, Mr. Johnson wrote:

> After our meeting on December 27 there seemed to be a very good understanding of our standard 10–year warranty covering this transformer. We sincerely feel it more than meets the warranty requirement of your specification.

In a second letter dated January 15, 1974, Mr. Johnson further clarified the provisions of Westinghouse's standard and special warranties.

On January 23, 1974, Wisconsin Power submitted a purchase order to defendant which stated:

> Furnish and deliver one (1) 530 MVA, 55°C rise 345KV/22KV Main Power Transformer in accordance with Sargent & Lundy Specification W–2806 and Westinghouse proposal NMDU–4177 dated 12/7/73 as amended by Westinghouse letters dated 12/31/73 and 1/15/74. Pricing to be as follows:
>
> Quoted price of $688,230.00, f.o.b. cars, Columbia less $1,998.00 for payment net 30 days, less $1,600.00 for deleting spare low voltage bushing. Price is escalable per Westinghouse letters of 12/31/73 and 1/15/74. Price includes oil at $.30/gal., adjustable on the basis of actual cost of oil at time of shipment, and special Westinghouse out and in warranty.
>
> Total base price is $684,632.00 escalable.

The reverse side of the purchase order contained the following "term[ ] and condition[ ] to be complied with in filling this order."

> 9. The Seller warrants that all articles covered by this order will be in strict accordance with the specifications and drawings or other descriptions furnished by the Buyer and free from defects in materials and workmanship. If any failure to comply with this warranty appears in EQUIPMENT (as distinguished from material) specified in this order within one year from date of shipment, the Buyer will notify the Seller thereof immediately and the Seller shall thereupon remedy such failure by adjustment or by repair or by replacement (f.o.b. Seller's original point of delivery) without expense to the Buyer. In the event Seller's usual published warranty applicable to the materials or services covered by this order is more favorable to Buyer in any respect, Seller's warranty shall apply in such respect.

Pursuant to the purchase order, defendant proceeded to manufacture the transformer in accordance with the drawings and specifications provided by Sargent & Lundy. The transformer was shipped to the Columbia Generating Station in February 1975. Upon receipt, the transformer was completely assembled and tested, and then stored in the open air as a spare generator until early 1978, when it was installed on a permanent foundation, fully

energized and placed into service. The transformer operated satisfactorily until a malfunction occurred on September 9, 1982, when a defective bushing failed and caused extensive damage to the transformer. High voltage bushings transmit the transformed electrical power from the interior of the transformer to the transmission system's exposed overhead conductors and are mounted on the top of the transformer case. The bushing failure did not cause damage to any property other than the transformer itself. According to the complaint, the cost of repairing the transformer amounted to $1,351,000.

The complaint consisted of four tort claims. The products liability and negligence claims alleged that the transformer was damaged because it was in a defective condition and therefore unreasonably dangerous, and that the transformer was negligently designed and manufactured. The two misrepresentation claims alleged that Westinghouse had either negligently or intentionally misrepresented that the transformer was free from defects in material and workmanship.

The district court granted defendant's motion for summary judgment as to the products liability and negligence claims on alternative grounds. First, it held that under Wisconsin law economic loss sustained as a result of damage to an allegedly defective product itself is not recoverable in tort, but only in contract. Alternatively the court held that the tort claims were barred by the terms of the purchase contract. The district court also granted summary judgment to defendant on the misrepresentation claims, but plaintiffs' appeal challenges only the district court's decision with regard to the first two claims.

The district court's first holding, that economic loss alone is not recoverable in tort, was based largely on a recent decision of this Court, *Twin Disc, Inc. v. Big Bud Tractor, Inc.*, 772 F.2d 1329 (7th Cir.1985). In *Twin Disc*, we set out the rationale for

limiting recovery in tort in cases alleging pure economic loss:

> the parties to a purely commercial transaction should not be able to recover in tort for economic losses arising out of that transaction when the parties have negotiated and the UCC provides for adequate contract remedies. It would undermine the law of sales and ignore the understanding of the parties as reflected by their contract ... if the buyer was able to recover for its economic losses under a tort theory after the seller had bargained for and the buyer had agreed to a limitation of warranty remedies.

*Id.* at 1332. We then noted that this policy argument had never been explicitly adopted or rejected by the Wisconsin legislature or courts. Although the Wisconsin Supreme Court once stated in dicta, in a case involving damage to property other than the product itself, that a strict liability claim may be brought for pure economic loss involving damage only to the product itself, *City of La Crosse v. Schubert, Schroeder & Assoc.*, 72 Wis.2d 38, 44, 240 N.W.2d 124, 127 (1976), no Wisconsin court has ever decided a case where, as here, two commercial parties agreed to a contract containing warranty provisions, the contract was subsequently breached, and the wronged party then sued in tort for purely economic losses arising out of that breach. Given the uncertainty surrounding whether the Wisconsin courts would permit recovery for economic loss in tort actions where there is no damage to persons or property other than the product itself,[1] and the substantial policy concerns involved, particularly the potential disruption of contract remedies and commercial relationships if tort remedies were allowed in business transactions, we declined to expand Wisconsin law to recognize such claims "in the absence of a more direct indication of intent by the state courts or legislature." *Twin Disc*, 772 F.2d at 1333; see also *Leadfree Enterprises, Inc. v. United States Steel Corp.*, 711 F.2d 805, 808–809

---

1. Wisconsin does allow the recovery of economic loss in tort when the economic loss is combined with damage to the plaintiff's person or property. See *City of La Crosse v. Schubert, Schroeder & Assoc.*, 72 Wis.2d 38, 44, 240 N.W.2d 124, 127 (1976); *Twin Disc*, 772 F.2d at 1333.

(7th Cir.1983) (concluding that Wisconsin law precludes recovery for purely economic loss in products liability).

The plaintiffs argue that in *Brooks v. Hayes*, 133 Wis.2d 228, 395 N.W.2d 167 (1986), the Wisconsin Supreme Court provided just such a direct indication of intent to allow recovery of economic loss alone in tort actions. After examining that decision, we are unconvinced that it evidences the intent which plaintiffs maintain. In *Brooks*, the Wisconsin Supreme Court held that the owners of a newly constructed residential home could maintain an action in both tort and contract against a general contractor for the negligence of a subcontractor in installing a "heatilator," a device designed to increase the efficiency of the fireplace. Several important factors distinguish *Brooks* from *Twin Disc* and the present case. First, both the parties and the court agreed that the facts of the case gave rise to a typical tort claim. The subcontractor's alleged negligence led to a fire in the home causing structural damage around the fireplace and smoke damage to both the house and the owners' personal belongings; hence the plaintiff-owners suffered damage to property other than the heatilator. Second, the principal issue in the case was whether the general contractor could be held liable in either contract or tort for the subcontractor's negligence. The case did not involve the construction or application of any warranty provisions restricting the remedies available to the plaintiff-owners resulting from any breach of contract or of the warranty provisions. Indeed the court had no occasion to cite

with either approval or disapproval our decision in *Twin Disc,* and to our knowledge no Wisconsin court has ever discussed the *Twin Disc* holding.

Plaintiffs make much of the fact that in discussing the overlap between tort and contract in *Brooks v. Hayes*, 133 Wis.2d at 246, 395 N.W.2d at 174, the Wisconsin Supreme Court quoted its observation in *Fisher v. Simon*, 15 Wis.2d 207, 212, 112 N.W.2d 705, 708 (1961), that "accompanying every contract is a common law duty to perform it with care and skill, and a failure to do so is a tort as well as a breach of contract." In interpreting that very same maxim only three years earlier, however, the Wisconsin Supreme Court held that for a breach of contract to give rise to a cause of action in tort, "there must be a duty existing independently of the performance of the contract." *Landwehr v. Citizens Trust Co.*, 110 Wis.2d 716, 723, 329 N.W.2d 411, 414 (1983). To hold otherwise, the court argued, would destroy the distinction between tort and contract, "since some kind of foreseeable injury or damage is present in virtually all contractual breaches." *Id.*[2]

As should be evident from the above discussion, we believe that *Twin Disc* remains an accurate statement of Wisconsin law notwithstanding the Wisconsin Supreme Court's decision in *Brooks v. Hayes.* Nevertheless, there is no need to determine this issue conclusively because the plaintiff's claims are clearly barred by the terms of the contract.[3]

---

**2.** A number of recent Wisconsin state court decisions have cited with approval *Landwehr*'s recognition of the significant distinctions between contract and tort law. See, *e.g., Brockmeyer v. Dun & Bradstreet*, 113 Wis.2d 561, 575 and n. 16, 335 N.W.2d 834, 841 and n. 16 (1983) (citing *Landwehr* and holding that action for wrongful discharge may be maintained only in contract and not in tort); *Dvorak v. Pluswood Wisconsin, Inc.*, 121 Wis.2d 218, 220, 358 N.W.2d 544, 545 (Ct.App.1984) (Under *Landwehr,* "[i]n order for such a cause of action in tort to exist, a duty must exist independently of the performance of the contract."); *McDonald v. Century 21 Real Estate Corp.*, 132 Wis.2d 1, 6–7, 390 N.W.2d 68, 70–71 (Ct.App.1986) ("The common law has evolved to recognize differences

between civil actions for breach of contract and for tort. Causes of action in tort and contract have historically had different purposes and protected different interests.... We think the more recent cases, like *Dvorak* and *Landwehr,* better state the law by differentiating between duties imposed by the law and obligations assumed under contract.").

**3.** We therefore do not reach plaintiff's further contention that the bushing was property separate and distinct from the transformer and that the damage to the transformer caused by the failed bushing was therefore damage to "other property."

■ Under the Uniform Commercial Code, as adopted in Wisconsin, a manufacturer may restrict its liability, within limits, by disclaiming warranties or limiting available remedies. Wis.Stat. §§ 402.316, 402.-719; *Murray v. Holiday Rambler, Inc.*, 83 Wis.2d 406, 414–420, 265 N.W.2d 513, 517–520 (1978). In accordance with Wisconsin Power's bid instructions, defendant took exception to the warranty provisions contained in the bid solicitation and instead submitted its own warranty provisions. In its cover letter accompanying its proposal, defendant clearly stated that its price quotation was based on its own warranty provisions and limitation of liability clause set out in Selling Policy 48–600, part of the proposal. As reproduced in full above, the defendant's standard warranty conspicuously provided that the stated warranty was exclusive and in lieu of all other warranties of quality, including implied warranties, and that the remedies set out therein were the "sole remedies for any failure of Westinghouse to comply with the warranty provisions, whether claims by the Purchaser are based in contract or in tort (including negligence)." The limitation of liability clause, also reproduced above, similarly emphasized that "the remedies of the Purchaser set forth herein are exclusive."

When Wisconsin Power submitted its purchase order for one main power transformer at the price quoted in defendant's proposal, a price expressly based on the defendant's warranty and limitation of liability provisions as set out in SP 48–600, it necessarily accepted the terms of those provisions. Indeed the purchase order incorporated as part of the contract two letters written by defendant clarifying the provisions of its standard and special warranties, and it expressly noted that the price included the "special Westinghouse out and in warranty," covering transportation and assembly costs associated with repair or replacement. Wisconsin Power, on behalf of the other plaintiffs, contractually agreed to limit its remedies in both contract and tort to those provided for breach of defendant's warranties. Plaintiffs cannot now disclaim that agreement.

■ Plaintiffs argue that Wisconsin Power and defendant Westinghouse never reached agreement concerning the warranty provisions covering the contract. They base their argument on paragraph 9 of the preprinted terms and conditions appearing on the reverse side of the purchase order. Paragraph 9 provided for a warranty period of "one year from date of shipment." It further provided that "in the event Seller's usual published warranty applicable to the materials or services covered by this order is more favorable to Buyer in any respect, Seller's warranty shall apply in such respect." Because the warranty provision contained in paragraph 9 differed from the warranty provisions contained in defendant's proposal, plaintiffs maintain that the conflicting warranty provisions should be excised from the contract with the resulting agreement containing only those nonconflicting terms (*e.g.*, price, quantity, delivery date) about which the parties agreed.

Plaintiffs' argument is completely unpersuasive. In light of Wisconsin Power's express acceptance of defendant's warranty and limitation of liability provisions on the face of its purchase order, any conflicting, preprinted language on the reverse side is ineffective. It would be nonsensical to hold that a party's express acceptance of certain terms of a contract may be negated by preprinted form language which the party itself either ignores or consciously overrides.

Moreover, even if we were to give effect to paragraph 9, at most it would be construed as an additional term in the acceptance. Under the Uniform Commercial Code, such additional terms are considered proposals for addition to the contract which between merchants, such as the sophisticated commercial parties here, become part of the contract unless, among other things, the offer expressly limits acceptance to the terms of the offer or the additional terms materially alter the offer. Wisc.Stat. § 402.207. Because defendant made clear that its quoted price was based on its own warranty and limitation of liability provisions, Wisconsin Power's acceptance of defendant's offer at that particular price was limited at least to those terms.

Furthermore, to the extent that paragraph 9 attempted to disclaim defendant's exclusivity of warranty and limitation of liability provisions, it was certainly a material alteration of defendant's proposal. For both of these reasons paragraph 9, if effective, never became part of the contract.

It is interesting to note that the intent of paragraph 9 was to allow Wisconsin Power unilaterally to pick and choose among the various provisions of a Seller's warranty. Wisconsin Power could accept those provisions of the Seller's warranty, such as, in this case, the length of the warranty period, which were more favorable than the terms of paragraph 9 and reject those, such as the exclusivity of warranty and limitation of liability provisions, which were less favorable. If Wisconsin Power wanted to reserve its right to sue defendant in tort for equipment failure beyond the stated term of the warranty, it should have negotiated for such a right. Of course defendant would have demanded a substantially higher purchase price to bear the risk of equipment malfunction over a longer period of time than that provided by the warranty. But Wisconsin Power cannot accept the favorable purchase price and then disclaim the conditions underlying that price.

In *Brooks v. Hayes*, 133 Wis.2d 228, 248, 395 N.W.2d 167, 175 (1986), the Wisconsin Supreme Court held that a court "must preserve the allocation of risk arrived at contractually between private parties." When Wisconsin Power accepted defendant's proposal at the quoted price, it accepted defendant's warranty and limitation of liability provisions and thereby an allocation of risk whereby defendant bore the risk of equipment failure during the period of the warranty, eighteen months from the date of shipment for the transformer as a whole and ten years from the date of shipment for the core and coil assembly, and plaintiffs bore the risk of failure thereafter. The accident here, which plaintiffs acknowledge did not involve the core and coil assembly, occurred over six years after the warranty period had expired. By the terms of the contract, plaintiffs have no remedy in contract or tort against defendant and must bear the cost of the trans-

former failure itself. There is no reason for this Court to alter, and in the words of the Wisconsin Supreme Court in *Brooks v. Hayes*, we "must preserve," the allocation of risk arrived at by two sophisticated commercial parties of equal bargaining strength through a negotiated contract containing bargained for warranty provisions.

Finally, plaintiffs argue that if defendant's warranty and limitation of liability provisions did become part of the contract, they should be disregarded because they failed of their essential purpose. See Wis.Stat. § 402.719(2) ("Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in chs. 401 to 409"). The Official Comment to UCC § 2–719 explained:

> [U]nder subsection (2), where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article.

This is certainly not a case in which an exclusive or limited remedy failed of its essential purpose. To the contrary, the warranty provisions here operated just as intended, allocating the risk of loss between the parties both before and after the warranty expired. The transformer operated satisfactorily long after the warranty period had run. A purchaser cannot claim that a warranty provision has failed of its essential purpose merely because a potential claim does not arise until after the warranty period has expired.

Plaintiffs emphasize that because they did not place the transformer into service until early 1978, the warranty period, which extended for eighteen months from the date of shipment, had already expired prior to that time. Plaintiffs, however, were certainly on notice that the warranty period extended from the date of shipment and not from the date of actual use in service. Had they desired a warranty extending from the date of actual use, they should have negotiated for one. Interest-

ingly enough, paragraph 9 of Wisconsin Power's purchase order provided that the warranty applied for only "one year from date of shipment." Furthermore, an eighteen-month warranty extending from the date of first actual use would not have protected plaintiffs here since the transformer failure occurred more than four years after the transformer was initially placed in service. If plaintiffs desired a lifetime warranty, again they should have negotiated and paid for one. We fully agree with the district court that the "plaintiffs cannot seriously contend that the contract failed of its essential purpose because they were denied a fair quantum of remedy when the remedy provided for in the contract was a product of their own making." 645 F.Supp. 1129, 1138 (W.D. Wis.1986).

Two sophisticated commercial parties negotiated a contract for the purchase of a large piece of equipment and allocated the risk of equipment failure between them. Plaintiffs cannot be allowed to disclaim that bargained for allocation merely because a malfunction occurred during the period in which it was to bear the risk of such failure. The judgment of the district court is affirmed.